(March 11, 1889.)

BURKHART, Speaker of the House, v. REED, Chief Clerk of the House, et al.

[22 Pac. 1.]

Mandamus—Legislative Record—Chief Clerk—Territorial Secretary.—Burkhart was Speaker of the House. Reed was chief clerk. At the end of the sixty days, which was the full length of the session fixed by Congress, Speaker Burkhart declared the session closed. Speaker Burkhart and part of the members left the room. Part of the members remained and elected Wheeler a Speaker *pro tem.* and proceeded with the business and passed a number of bills. The clerk made up the proceedings of the day

including that under the Speaker *pro tem.* and by him signed, and delivered them to Curtis, secretary of the territory, who received and receipted for them to said clerk. Speaker Burkhart petitions this court to issue a writ of mandate, directing Secretary Curtis to produce the record of the House to the court, that the court direct the record to be amended by the chief clerk to correspond to the facts and permit the said Speaker Burkhart to sign the same as Speaker. Held, that *mandamus* will not lie to inquire into the acts of a legislative body by verbal testimony, and cause its record to be corrected, or if there be no record to make one; and that a legislative journal can only be corrected by the body that made it.

Arthur Brown, Lyttleton Price, Texas Angel, and S. B. Kingsbury, for Petitioner.

R. Z. Johnson and Albert Hagan, for Respondent Reed.

James H. Hawley and John S. Gray, for Respondent Curtis.

WEIR, C. J.—This is an application by the plaintiff for a writ of mandate to be directed to the defendants above named. The grounds upon which the writ is asked are fully set out in the petition of the plaintiff, which is as follows: "The above-named plaintiff, H. Z. Burkhart, shows that he was the duly elected Speaker, and is now the actual and acting Speaker, of the House of Representatives of Idaho; that defendant, Charles H. Reed, is chief clerk of the House of Representatives, and Edward J. Curtis is the secretary of the territory of Idaho; and for cause of action for *mandamus* alleges that the said defendant, Charles H. Reed, has in his possession, as such chief clerk, the minutes of the proceedings of said House of Representatives for the last day of the fifteenth session; that the same has not yet been signed by plaintiff, H. Z. Burkhart, the Speaker, and said defendant Reed refuses to present the same to said Speaker for his signature, but that said defendant Reed, in preparing a record of said minutes, omitted a part of the said proceedings; that in truth, on the sixtieth day of the said session, February 7, 1889, just before 12 o'clock P. M., the said Speaker inquired if there was any further business; that the clerk replied there was none; said Speaker then requested the journal

to be read, which was done by the clerk; that thereupon the proceedings, as recorded in said journal, were approved by the House of Representatives, and by said Speaker declared to be approved; that thereupon, the hour of 12 o'clock midnight having arrived and passed, the Speaker did, after said hour, declare and announce that the time having arrived when, by act of Congress, the session of the legislature must close, therefore he, as Speaker, thereby then and there declared said session closed and adjourned without day; that no objection was made by the House, or any member thereof, to the said adjournment, or to the authority of said Speaker to declare the same adjourned, but all acquiesced therein; that after the Speaker and a part of the members had retired from the room a portion of the members pretended to elect a Speaker *pro tem.,* to wit, one George P. Wheeler, and assumed and attempted to proceed with pretended legislation; that a large number of assumed and pretended bills were assumed to be passed by the said remaining members, and pretended to become the acts of the legislature; that all pretended proceedings on said last day after the Speaker retired were after 12 o'clock midnight, and after said House had been adjourned; that in preparing the journal of said proceedings said clerk omitted to state, and did not state, that the minutes were read and approved by the House; that the Speaker declared the House adjourned; that the House was adjourned by the acquiescence and assent of all the members, and that the Speaker *pro tem.* was elected after the said adjournment, and the subsequent pretended legislation had and done after such adjournment; that said chief clerk, Charles H. Reed, pretends and asserts that he has made up the journal of said last day's proceedings, has procured the signature of said Wheeler as Speaker *pro tem.,* and delivered the same to Edward J. Curtis, secretary of the territory, but the minutes of proceedings as prepared by said Reed omit the matter as hereinbefore alleged to be omitted, and is a false statement or record of the said proceedings; that the said secretary, Edward J. Curtis, treats and wrongfully holds out the minutes so signed by said Wheeler and the chief clerk as the true minutes, record and journal of the

House of Representatives, and is recording the same as such journal, and threatens to certify them to Congress as the journal of said House of Representatives; that he knew that said proceedings of the last day were not signed by the Speaker; that plaintiff, by his attorney Lyttleton Price, has filed, to wit, on the 9th of February, 1889, and before the same were recorded with said secretary, Edward J. Curtis, a demand in writing that he do not record said proceedings, and a protest against the same on the ground that they were not the correct record of the proceedings of the House of Representatives; that the plaintiff did, on the eighth day of February, 1889, demand of the defendant, Charles H, Reed, that he present said minutes of proceedings to the plaintiff for signature; that he failed and refused, and still fails and refuses, to so produce the same; that the rules and practice of said House of Representatives require that the said defendant Reed present all the minutes of proceedings thereof to the plaintiff, as such Speaker, for his signature. Wherefore plaintiff prays that said Edward J. Curtis may produce in court the original minutes, record or proceedings delivered by said Reed to said Curtis, and that said defendant, Charles H. Reed, be required to prepare said journal according to the facts as hereinbefore set forth, and state that said minutes were read and approved; that after the hour of 12, midnight, of February 7, 1889, the Speaker declared said House adjourned *sine die;* that the House did not object to such adjournment, but acquiesced therein, and in all of the other proceedings hereinbefore stated; and that such journal be handed to the Speaker to sign, and thereafter, when so amended and completed, to be delivered to said secretary of the territory as the minutes of the proceedings of said last day, or that said defendants show cause forthwith why said defendants should not do so."

Upon this petition the court granted an alternative writ of mandate, which was made returnable on the fourteenth day of February, 1889, to which the defendant Curtis demurred, and assigned for grounds of demurrer the following: "1. That this court has no jurisdiction of the person of the defendant; 2. That this court has no jurisdiction of the subject matter of this action; 3. That the plaintiff has not legal capacity to sue, in this: 1. That the plaintiff was not at the time of the com-

mencement of this action, and is not now, the Speaker of the House of Representatives of Idaho territory; 2. That the plaintiff has no beneficial interest in the result of this action; 3. That if the plaintiff is now, or was at the time of the commencement of this action, Speaker of the House of Representatives of Idaho territory, this action should and must have been brought upon the relation of the proper prosecuting officer; 4. That there is a misjoinder of parties defendant herein; that this defendant, as secretary of Idaho territory, is joined as codefendant with Charles H. Reed, clerk of the House of Representatives of Idaho territory; that there is no community of interests or duties between said defendants, and no act, the performance of which this writ was issued to enforce, could be jointly performed by them, and the writ herein requires different and separate acts from each of said defendants; 5. That several causes of action have been improperly joined herein in this: that the defendant, Charles H. Reed, is required to do and perform certain acts, and this defendant required other and different acts, which acts have no relation to each other; 6. That it does not state facts sufficient to constitute a cause of action; 7. That the same is ambiguous and uncertain in this: it does not appear what is required of this defendant; it does not clearly appear who is to make the alterations in the records and journals; it does not appear who has the possession of the journals and records of the House of Representatives, or who did have the possession at the time of the commencement of this action."

The jurisdiction of this court to issue the writ is derived from section 3816 of the Revised Statutes, which is as follows: "Its original jurisdiction extends to the issuance of writs of mandate, review, prohibition, *habeas corpus,* and all writs necessary to the exercise of its appellate jurisdiction."

We do not deem it necessary to notice the various grounds of demurrer as hereinbefore set forth, but will confine our attention to the sixth ground: "That it does not state facts sufficient to constitute a cause of action." The disposition of the case upon this ground disposes of it according to our view, and renders it unnecessary for us to consider any further point. The petition for complaint alleges that the plaintiff

was the duly elected Speaker, and is now the actual and acting
Speaker, of the House of Representatives of Idaho; that the
defendant, Charles H. Reed, is chief clerk of the House of
Representatives, and Edward J. Curtis is the secretary of the
territory of Idaho; that Charles H. Reed has in his possession,
as such chief clerk, the minutes of the proceedings of the said
House of Representatives for the last day of the fifteenth ses-
sion; that he refuses to present the same to the plaintiff for
his signature, and has prepared a record of said minutes,
omitting a part of the said proceedings.  The petition then
proceeds to set forth certain facts which it alleges took place
in the House of Representatives, but that the defendant Reed
has omitted such proceedings from the minutes; and proceeds
to allege that the said chief clerk has made up a journal of
said last day's proceedings, has procured the signature of one
Wheeler, as Speaker *pro tem.*, and has delivered the same to
Edward J. Curtis, secretary of the territory; that the minutes
of proceedings, as prepared by said Reed, omit the matters
alleged in the said petition to have been omitted, and is a
false statement or record of the proceedings; that the secretary,
Edward J. Curtis, wrongfully holds out the minutes so signed
by Wheeler and the chief clerk as the true journal of the House
of Representatives, and is recording the same as such journal,
and threatens to certify them to Congress as the journal of
the House of Representatives, although he knows that the said
proceedings were not signed by the plaintiff.  While it is true
that a general demurrer admits the truth of facts as stated
in the pleadings, yet it is equally true that facts not well
pleaded, and mere conclusions of law, are not admitted by a
demurrer.  There is no pretense that the averments in this
paragraph are mere conclusions of law, or that the facts are
not well stated.  The contention is that the facts stated, if
established, would be immaterial and irrelevant, and would
constitute no valid ground upon which this court could act.
In plain language, the facts, if admitted true, would not con-
stitute a cause of action.  (Bliss on Code Pleading, sec. 418.)
Moreover, "a public statute, of which we are bound, *ex-officio,*
to take notice, as well as to the time it went into effect, as to
its provisions, this allegation is not admitted, or to be taken to

be true by the demurrer. The existence or the time of the taking effect of a public act cannot be put in issue, or admitted or denied by the pleadings, but must be determined by the judges themselves." (*Attorney General v. Foote,* 11 Wis. 16, 78 Am. Dec. 689.)

It seems to be well settled that the courts will take judicial notice of the journal of a legislative body to determine whether an act of the legislature is constitutionally passed, and for the purpose of ascertaining what was done by the legislature. A journal, according to the petition, has been filed with the secretary of the territory, and is therefore a public record, and such a record as this court is bound to take judicial notice of. There is, then, no need of stating what appears upon the journals of the legislature or what does not appear. Such matters are judicially noticed without averment. No issue of fact can be taken upon what a court is required, as a court, to know. These averments in the pleading, even if true, contain no issuable fact, and in such a case a demurrer is the proper remedy. The petition concedes that a journal has been filed by the clerk, upon the adjournment of the legislature, with the secretary of the territory, but alleges that the journal was not properly made up by him. Section 124 of the Revised Statutes of Idaho provides that "the clerks, at the close of each session of the legislature, must mark, label, and arrange all bills and papers belonging to the archives of their respective Houses, and deliver them, together with all the books of both Houses, to the secretary of the territory, who must certify to the reception of the same."

We have said that the petition concedes that a journal has been delivered to the secretary of the territory, and that the secretary of the territory treats such journal as the journal of the legislature. By section 190 of the Revised Statutes the secretary of the territory is charged with the custody of such journals. Section 1844 of the organic act provides that the secretary shall record and preserve all the laws and proceedings of the legislative assembly. We are now invited to direct the secretary to produce before this court the journal which was delivered to him by the clerk of the House of Representatives, in order that the plaintiff, a member of the

legislature, may be allowed to make certain corrections therein, and that, after such corrections are made, the secretary receive the corrected journal as the journal of the legislature, delivered to him by the clerk thereof. The production of the journal would be a mere idle proceeding, unless for the purpose of allowing the court to pass upon the question of fact as to whether this book is or is not the journal of the legislature. The journal itself is a public record, and open for public inspection, and any citizen of the territory is entitled to inspect the same; so that its production can only be asked for in order to allow certain corrections to be made. Hence, if this court comes to the conclusion that it cannot allow such corrections to be made, then the production of the journal merely for inspection is wholly unnecessary.

There is no dispute that the law places no obligation upon Curtis, as secretary, other than that he must receive the journal from the clerks of the legislature and record the same. From the language of section 124 of the Revised Statutes it is clearly the duty of the clerk to make up such records as he deems proper to be delivered to the secretary, and deliver the same. This he has done, and that is the only duty imposed upon him by statute. The law presumes he has done this correctly, and, if not, he is amenable to the Criminal Code of this territory. The question whether the papers so delivered by the clerk to the secretary are correct or not is one which this court cannot entertain. The papers so delivered either are or are not the journal of the legislature. If they are, then this proceeding necessarily fails. If they are not, then it is not the province of this court, nor within the power of this court, to question them, or to make a journal for the legislature. That power is vested in the legislature alone, and is not a power conferred upon the courts.

It is contended with great zeal by the learned counsel for the relator that the journal so delivered is not the journal of the legislature; hence the relator has a right to correct it, so that in his judgment it may become the journal of the legislature, and, as so corrected, that the same be filed with the secretary. This position is wholly untenable. Certainly this court would not correct so important a document as the

journal of a legislature, or what purports to be the journal of
a legislature, upon the unsupported statement and recollection
of one person only, without hearing evidence which might be
offered by the defendant. That would necessarily involve the
trial of an issue of fact—namely, is the journal so filed cor-
rect or incorrect—the trial of which issue might lead to the
most absurd consequences, which we do not deem necessary to
state. If the plaintiff desires the production of this public rec-
ord as a mere matter of curiosity, then, of course, the court
would refuse to grant the writ. His only object in demanding
its production, therefore, can be but for one purpose only, and
that is, that the court may correct it according to certain evi-
dence which may be introduced. The principle of law is
settled beyond controversy that a court will not go behind
the journal of a legislature to ascertain what was done by that
body. The journal itself is conclusive, and, if the journal
is incorrect, or improperly made up, it is for the legislature
itself to correct it, and not for the court. The journal, as
filed, purports to be the journal of the legislature. It is
signed by George P. Wheeler, Speaker *pro tem.* of the House, and
would, therefore, seem to be correct on its face. The presump-
tion always is that when an act of the legislature is signed
and enrolled, that it has gone through all the necessary formal-
ities. A few of the states hold that the enrolled statute is
conclusive evidence of its due passage and validity. A great
majority of the states, however, hold that this makes out a
*prima facie* case only, and that such case may be overthrown
by the journals, and that the judges, for the purpose of sat-
isfying themselves, may take judicial notice of the journal,
and, if that appear to be regular, that is final and conclusive
upon the courts. (Cooley's Constitutional Limitations, 5th
ed., 163, note 2; *Sherman v. Story*, 30 Cal. 253, 276, 89 Am.
Dec. 93; *Territory v. Clayton*, 5 Utah, 598, 18 Pac. 628, 629;
*State v. Smith*, 44 Ohio St. 348, 7 N. E. 449; *Koehler v. Hill*,
60 Iowa, 543, 14 N. W. 738.)

We have been unable to find a single case which maintains
the contrary of this document. Counsel, with great zeal, have
searched for such authority, but have been unable to cite us
to a single one. We have endeavored to find some authority

for the position taken by counsel for the plaintiff, but have been unable to find any. The authorities cited by counsel, in which superior courts have compelled inferior courts to correct their records, are not at all in point, and are entirely different in principle. The superior courts have authority over inferior courts, and it is their duty to compel them to keep proper records. On the contrary, courts have no authority over the deliberations of a legislative body, and therefore cannot compel them to keep any record, or interfere with any record that they have kept. The case of *Territory v. Clayton,* *supra,* is in point here, and seems to have been well decided both upon authority and principle. In that case the court refused to go as far as we are disposed to go. There the court refused to look beyond the record contained in the office of the secretary of the territory, and refused to go to the journals of the legislature for information, and expressly held that it would not receive verbal testimony to support or contradict the record in the office of the secretary of the territory.

It is unnecessary for us to go into the reasons which have induced the various courts to unanimously proclaim the doctrine which we may have set forth. It would be a mere waste of time, because most of the authorities which we have cited contain the reasons of the courts for their action.

It is contended that there is some difference between a direct attack upon the action of a legislature and a collateral attack. It is sufficient to say that in every case which has been presented to our attention the attack upon the acts of the legislature has been collateral. We concede that this is the first case, so far as we are able to ascertain, in which the court has been invited by *mandamus* to inquire into the acts of a legislative body by verbal testimony, and to permit its record to be corrected, or, if there be no record, to make one; and we can safely say that this case is sanctioned by no precedent and sustained by no authority. "The supposed case of less than a majority of this court causing a judgment to be entered of record is not apropos, for, if it were done, the only remedy would be in this court, for the reason there is no other tribunal or department of the government that could afford one; and, by parity of reasoning, the only correction that can be

made in a legislative journal is by the body that caused it
to be made. The suggestion that fraud or bad motives in
those who caused it to be made might defeat the remedy,
would apply to the one case as well as to the other; but con-
fidence must be reposed somewhere, and why not in a legis-
lative body as to the keeping of its journals, as well as in this
court as to the keeping of its records? Besides, the people is
the final tribunal before whom, as a rule, such delinquencies
must be settled (Cooley's Constitutional Limitations, 168);
and, in the case of legislators, the return to the people being
at comparatively short intervals of time, it is difficult to see
how such abuses, if they exist, can be of very long standing,
and in such cases it is 'better to bear the ills we have than flee
to others we know not of.'" (*State v. Smith,* 44 Ohio St.
348, 7 N. E. 449.)

Some question has been raised by counsel for the plaintiff
that this body was not the legislature. As the petition itself
alleges that the plaintiff was the Speaker of the House, that
the defendant Reed was chief clerk of the House, and that
these journals, with certain exceptions, are the journals of the
House, and that, as such journals, they have been delivered
by the clerk to the secretary of the territory, and received by
him and recorded as such, we cannot consider that point.
For the reasons that we have stated the demurrer must be sus-
tained, and the application for a writ denied, with costs.

Logan, J., concurs.

BERRY, J., Dissenting.—In this case I am constrained to
dissent from the opinion of my associates, sustaining the de-
murrer in this proceeding, and I deem it necessary and proper
that the grounds of such dissent be stated. The object of
the proceeding is to secure the issuance of a writ of *mandamus*
against certain public officers. I shall at first confine my at-
tention to this case, and afterward refer to the similar case
of *Clough v. Curtis,* post, p. 523, 22 Pac. 8. It is a familiar
principle in law and practice that the allegations of a pleading
demurred to shall, for the purposes of that proceeding, be taken
as true. The allegations of this complaint are, therefore, to
be taken as admitted. I copy the body of the complaint in

this case, together with the demurrer, and make them a part of this dissenting opinion. The following is the complaint: "The above-named plaintiff, H. Z. Burkhart, shows that he was the duly elected Speaker, and is now the actual and acting Speaker of the House of Representatives of Idaho; that defendant, Charles H. Reed, is chief clerk of the House of Representatives, and Edward J. Curtis is the secretary of the territory of Idaho, and for cause of action for *mandamus* alleges that the said Charles H. Reed has in his possession, as such chief clerk, the minutes of proceedings of said House of Representatives for the last day of the fifteenth session; that the same have not been signed by plaintiff, H. Z. Burkhart, the Speaker, and the defendant Reed refuses to present the same to said Speaker for his signature; but that said defendant Reed, in preparing a record of said minutes, omitted a part of the said proceedings; that in truth, on the sixtieth day of said session, February 7, 1889, just before 12 o'clock P. M., the said Speaker inquired if there was any further business; that the clerk replied that there was none; said Speaker then requested the journal to be read, which was done by the clerk; that thereupon the proceedings, as recorded in said journal, were approved by the House of Representatives, and by said Speaker declared to be approved; that thereupon, the hour of 12 o'clock, midnight, having arrived and passed, the Speaker did, after said hour, declare and announce that, the time having arrived when, by act of Congress, the session of the legislature must close, therefore he, as Speaker, thereby then and there declared said session closed and adjourned without day; that no objection was made by the House, or any member thereof, to the said adjournment, or to the authority of the said Speaker to declare the same adjourned, but all acquiesced therein; that after the Speaker and part of the members had retired from the room, a portion of the members pretended to elect a Speaker *pro tem.,* to wit, one George P. Wheeler, and assumed, and pretended to proceed with the pretended legislation; that a large number of assumed and pretended bills were assumed to be passed by the said remaining members, and pretended to become the acts of the legislature; that all pretended proceedings on said last day, after the Speaker re-

tired, were after 12 o'clock, midnight, and after said House had been aljourned; that, in preparing the journal of said proceedings, said clerk omitted to state, and did not state, that the minutes were read and approved by the House; that the Speaker declared the House adjourned; that the House was adjourned by the acquiescence and assent of all the members; and that the Speaker *pro tem.* was elected after the said adjournment, and the subsequent pretended legislation had and done was after such adjournment; that said chief clerk, Charles H. Reed, pretends and asserts that he has made up the journal of said last day's proceedings, has secured the signature of said Wheeler as Speaker *pro tem.,* and delivered the same to Edward J. Curtis, secretary of the territory; but the minutes of proceedings, as prepared by said Reed, omit the matter as hereinbefore alleged to be omitted, and are a false statement or record of said proceedings; that the said secretary, Edward J. Curtis, treats and wrongfully holds out the minutes so signed by said Wheeler and the chief clerk as the true minutes, record, and journal of the House of Representatives, and is recording the same as such journal, and threatens to certify them to Congress as the journal of said House of Representatives; that he knew that said proceedings of the last day were not signed by the Speaker; that plaintiff, by his attorney, Lyttleton Price, has filed, to wit, on the ninth day of February, 1889, and before the same were recorded with said secretary, Edward J. Curtis, a demand in writing that he do not record said proceedings, and a protest against the same, on the ground that they were not the correct record of the proceedings of the House of Representatives; that the plaintiff did, on the eighth day of February, 1889, demand of the defendant, Charles H. Reed, that he present said minutes of proceedings to the plaintiff for signature; that he failed and refused, and still fails and refuses, to so produce the same; that the rules and practice of said House of Representatives require that the said defendant Reed present all the minutes of proceedings thereof to the plaintiff, as such Speaker, for his signature. Wherefore plaintiff prays that said Edward J. Curtis may produce in court the original minutes, record or proceedings delivered by said Reed to said Curtis, and that said defendant,

Charles H. Reed, be required to prepare said journal according to the facts as hereinbefore set forth, and state that said minutes were read and approved; that, after the hour of 12 o'clock, midnight, of February 7, 1889, the Speaker declared said House adjourned *sine die;* that the House did not object to said adjournment, but acquiesced therein, and in all of the other proceedings hereinbefore stated; and that such journal be handed to the Speaker to sign, and thereafter, when so amended and completed, to be delivered to said secretary of the territory as the minutes of the proceedings of said last day, or that said defendant show cause forthwith why said defendants should not do so." This complaint was verified.

### DEMURRER.

"Now comes the defendant, Charles H. Reed, and demurs to the alternative writ of mandate herein filed, on the grounds that it appears on the face thereof (1) that this honorable court has no jurisdiction of the subject of this proceeding; (2) that the court has no jurisdiction of the person of the defendant in this proceeding; (3) that said H. Z. Burkhart has not legal capacity to sue in this proceeding; (4) that there is a misjoinder of parties defendant in that said alternative writ joins this defendant and Edward J. Curtis, the secretary of the territory and an officer of the United States, as defendants; (5) that several causes of action have been improperly united, in that relief is demanded against this defendant, on the ground that this defendant has in his possession certain proceedings of the House of Representatives of the territory, and another alleged and distinct cause of action is stated against Edward J. Curtis, the secretary of the territory, on the ground that said Edward J. Curtis, as such secretary, has possession of said proceedings; (6) that the same does not state facts sufficient to constitute a cause of action, or to entitle said plaintiff to relief by writ of *mandamus* against this defendant; (7) that the same is ambiguous, unintelligible and uncertain in this: that it is first averred therein, as a ground of relief against this defendant, that this defendant has in his possession the minutes of the proceedings sought to be reached herein, as a ground of relief against the said de-

fendant, Edward J. Curtis, secretary of the territory; that this defendant has filed said minutes with said secretary, as this defendant is required by law to do; and that said secretary retains and preserves the same, as he is required by law to do."

Not having had an opportunity until the present moment to see or know the tenor or effects of the points made in the opinion of my associates upon the bench, beyond the bare fact that the demurrer was to be sustained, the scope of my observations may be, perhaps, beyond the required limits, made necessary by the opinion dissented from. But I will follow in some degree the order of the argument of the leading counsel in support of the demurrer.

1. There is, I think, no room for a serious question that this court has full and complete power to issue the writ as prayed; also, that it has jurisdiction of the subject matter of the complaint. The power to issue writs of *mandamus* must be vested somewhere, and the legislature, in plain and unequivocal terms has conferred it upon this court. It seems to me too plain to admit of any doubt. Section 1866 of the Revised Statutes of the United States says: "The jurisdiction, both appellate and original, of the courts provided for in sections 1907 and 1908 shall be as limited by law"; and in section 1907: "The judicial power in New Mexico, Utah, Washington, Colorado, Dakota, Idaho, Montana, and Wyoming shall be vested in a supreme court, district courts, and probate courts, and in justices of the peace." Revised Statutes of Idaho, sections 3815, 3816, title 2, entitled "Of the Supreme Court," are as follows, viz.: "The jurisdiction of this court is of two kinds: 1. Original; and 2. Appellate." Its original jurisdiction extends to the issuance of writs of mandate, review, prohibition, *habeas corpus*, and all writs necessary to the exercise of its appellate jurisdiction. Section 3817 defines its appellate jurisdiction.

2. So of the jurisdiction of the court over the persons of both defendants. It makes no difference that one of them, the secretary of the territory, is appointed by the President of the United States. He is not, therefore, the executive branch of the United States government, nor even of the territory of Idaho. Congress has declared, in the organic act of the terri-

tory, that the executive power of the territorial government is vested in the governor alone. The secretary is no more above the laws than the marshal, the United States district attorney, or the deputies of either of these officers, or the most humble person in the land. (*Kendall v. United States,* 12 Pet. 608; *United States v. Schurz,* 102 U. S. 372.) The authorities are numerous and clear that even cabinet officers are equally subject to the mandate of courts with any other person; but it is not necessary to cite those authorities. The one principally relied on by the defendants is that of *Marbury v. Madison,* 1 Cranch, 137. But that case was decided on other grounds than the official character of the party defendant. Congress supplied the defect found in the law in that case by conferring the needed power to issue the writ on the courts of the District of Columbia. Since then cabinet officers have constantly been held subject to the jurisdiction of courts with no more power than has this court. If the court can issue a writ at all—of which there is no doubt—no case can reasonably be supposed, unless it be the case of *Clough v. Curtis,* post, p. 523, 23 Pac. 8, now pending in this court, involving a part of this controversy, calling for the exercise of this power more emphatically than do the admitted facts in the case at bar. If cabinet officers are thus within the jurisdiction of the court, there is certainly no ground for an inferior officer of a territory to claim greater immunity, simply because he is appointed by the President. They, also, are appointed by the President, and stand nearer to him than any officer of the territory. The counsel for the secretary practically admits this by saying that a state court cannot issue a writ of *mandamus* to an officer commissioned by the United States, except as they are authorized by the United States. I think the counsel is mistaken in this, and that he will find that, while the rule as to state courts is not universal, it applies only where the officer's duties are purely federal, as in the case of a United States land officer; but not in such a case as this, where the officer is not in the service of the United States, but only an inferior officer of the territory acting in and for the territory. But even if it were otherwise, this court has federal jurisdiction, as well as territorial. I suppose that fact will not be disputed. I can see nothing valid in the objec-

tion that a territorial officer is not amenable to the laws because he is commissioned by the President of the United States.

3. The plaintiff has an unquestionable power to sue. He was, and still is, the Speaker of the House, and as such, had, and still has, the exclusive right to the performance of the duties set forth in the complaint. The public requires it of him, even if no executive or administrative officer can be found willing to assist him to his own and the public right. If that right is invaded, as by the defendants' demurrer it is admitted to be in this case, he may invoke the aid of this tribunal to enable him to perform his sworn duties to the public. Any member of that legislative body may interpose to preserve the lawful records of its proceedings, and prevent the dearest rights of the community, the very foundation of its laws—the evidence upon which the interests of thousands depend—from being, in a wholesale manner, falsified and debauched. It was shown on the argument that in a matter vital to the public any citizen may institute proceedings by *mandamus.* (High on Extraordinary Remedies, secs. 431-433; *Railroad Co. v. Hall,* 91 U. S. 354; *Hall v. Railroad Co.,* 3 Dill. 521, Fed. Cas. No. 5950.) In *Railroad Co. v. Hall, supra,* the supreme court of the United States held that *mandamus* was correctly brought by a citizen of Council Bluffs to compel the Union Pacific Railway Company to fulfill its contract with the United States to build a bridge across the Missouri river. This case meets the objection raised by the demurrer on this point, without at all referring to the official character and rights of this plaintiff. The contract with the United States on the part of the Union Pacific Railway Company was one to enforce which the attorney general would have been a proper officer to sue out the writ, and might have done it; but, as he did not do it, the court held that any other citizen might do so.

4. It is also contended that there is a misjoinder of defendants. No; there is no misjoinder if the facts are as stated in the complaint, and the demurrer admits them. What papers the secretary has are admitted to be unsigned, mutilated, and fraudulent papers, and are not "archives of the legislature," which alone the secretary has a right to receive, any more than would be the records of a baseball club, or any other

unlegislative association or gathering. Of this he was, and is, duly apprised. If what is admitted to be true are real facts, the secretary is aiding and abetting the clerk in his attempt to foist upon the territory as records what are not records, to be used, if at all, as conclusive evidence to establish as facts what are not facts, and that legislative acts were done which it is admitted were never done by a legislature. The joining by these two officers in the perpetration of a grave wrong, one doing one part and the other completing it, makes them both *particeps,* and subject to the same process, if necessary, for its correction and prevention. In this case it is necessary. The secretary must produce the fraudulent papers, abstain from treating them as genuine, or, as he threatens to do, from recording them and sending them to Congress, and the several officers of the United States government, as genuine, or in any way to act upon them, until the clerk shall write them truthfully, and they shall have the necessary official sanction of the chief officer of the House, whose proceedings they profess to record, and until they thereby become real records and archives of the legislature. There is no misjoinder.

5. Proceeding in the order of the attorney for the secretary, we may here inquire whether the session of the legislature did, in fact, expire with the seventh day of February, 1889. The inquiry is not necessary, perhaps, for the fact is admitted. But let us look into the facts and the law. It met on the tenth day of December, 1888. That was its first legislative day, and so appears on its journals. The session began with the beginning of that day. The claim that it did not begin till noon of that day, and hence that the first day should end at noon of the next day, and so for each day through its session, to the sixty-first day, simply because the territorial legislature had enacted that the legislature should meet at noon of the day appointed for the meeting, cannot for a moment be maintained. If such a thing could be, there would be no meridian to the legislative day. It met at 12 o'clock M.: that day's noon would be midnight. The law takes no notice of fractions of a day. Congress has said how long the session should continue, and it was not competent for the territorial legislature to prolong the time. This act of Congress is in the following words, and

has all the force of a constitutional provision: Revised Statutes of the United States, section 1852, says: "The sessions of the legislative assemblies of the several territories shall be limited to sixty days' duration." The act of the legislature fixing the hour recognizes the second Monday of December as the first day of the session. The section (Idaho Rev. Stats.) is as follows: Section 122. "At the hour of 12 o'clock M., on the day appointed for the meeting of any regular session of the legislature, the presiding officer, or, in his absence, the chief clerk of each House of the last session, must call the same to order, and preside until a presiding officer is chosen, or, in case of the absence of both of said officers, the senior member present must perform said duties. All members-elect present, having certificates of election from the clerk of the board of county commissioners of their respective counties, and no other person, has the right to participate in the organization of the respective Houses. Neither House must organize or transact business, but must adjourn from day to day until a majority of all the members authorized by law to be elected are present." It does not pretend to extend the time fixed by Congress, but merely fixes the hour of meeting, and declares it shall meet at noon of that day. There is nothing whatever in the statute, or either of them, or in the construction given them by either branch of the legislature in the numbering the days of the session, to justify this extraordinary claim. Both bodies counted in their journals the tenth day of December as one day of the session, and numbered from it. Even the bodies which met, as is alleged, on the eighth day of February, admit the hollowness of this pretense, by claiming its acts to have been done on the 7th of February instead of on the day on which it is admitted they were in fact done. They themselves seek to take shelter under a false date. Were there anything in this claim, no reason is apparent why acts done before noon of the 8th should be antedated a day to bring them within the law.

6. It was clearly the duty of the presiding officers of both Houses to obey the law; and, when the constitutional time had expired, to declare the session ended. Such action is abundantly sustained by both authority and precedent. In this case the acts of both presiding officers were acceded to by both

Houses. What occurred in the House also occurred in the council. When the minutes of the last day had been read, and formally approved in the House by the members in session, and the clerk had publicly announced that there was no more business before the House, and the Speaker, at 1 o'clock in the forenoon of the 8th of February, declared to the listening House that the hour fixed by Congress for adjournment had arrived and passed, and that, in view of such fact, he, as presiding officer, declared that session ended, and there was no objection or appeal from this decision, that session was ended. Three things concur to give force and effect to the solemnity of his act: 1. The expiration of the time fixed by Congress; 2. The official action of the presiding officer; and 3. The assent and concurrence of the entire body. Whether, under such conditions, the House broke up, as is conceded it did, or all members remained in their places, is of no moment. The regular session was ended; and if, before the meeting of the next legislature, that body could reconvene, it must be in extra session, called pursuant to law. After that moment, whatever was done by certain members was not done by a legislative body, and all its acts pretending to be legislative acts are, in fact, absolutely null and void.

7. It follows from the facts that this so-called legislature was not a legislature, and those so-called records are not, in any sense, legislative records; that the arguments and authorities upon the power of the court to correct or supervise acts done by a real legislature, or the effect, for any purpose, of real legislative records, or whether such real records can or cannot be impeached collaterally, and any and all questions, and, I think, either in the majority of opinions of this court, or otherwise, based on a presumption founded on real records, are wholly irrelevant, and do not bear on this case. These questions comprise most of the arguments of these demurrants, and have no bearing on the case before this court. They are collateral merely. Those papers are not called in question collaterally, but directly, by proceedings provided by law to determine whether they are, in fact, records of a legislative body or not; and, if not records, then to have them, or such of them as are not records, so declared, and to have the spurious por-

tions expunged, and the true records substituted. This is a plain and simple duty of the court, for which it was created and armed with plenary power.

8. These considerations apply as well to the case of *Clough v. Curtis, supra,* as to this case. The facts in the two cases are, in the main, the same, only that like proceedings took place in the council as in the House, and except that in that case a fact is also alleged and admitted by the demurrer: that the true record was mutilated; that three leaves of the genuine records, which had actually been written up and approved before adjournment, were removed from the records, and their places supplied with matter falsely purporting to be a record of proceedings by the legislature before it had expired. The high-handed character of those acts should be investigated, and should not be hidden. If those grave charges be not in fact true, let them be denied, and let both sides be admitted to their proof. The demurrer in both cases should be overruled.