## ARGENTINE MINING COMPANY, APPELLANT *v.* F. M. BENEDICT, RESPONDENT.

MINING CLAIMS—RIGHTS OF SUBSEQUENT LOCATION—ASSESSMENT WORK—NEGLECT OF AGENT—ATTEMPTED RELOCATION—FRAUD—RELOCATION IN NAME OF ANOTHER—KNOWLEDGE OF FRAUD.

*Mining Claims—Rights of Subsequent Location.*
    The proof being sufficient to support the finding that the location of a certain mining claim was substantially in compliance with Sec. 2324 R. S. United States, a conflicting but subsequent location has no rights to the ground in conflict.

*Assessment Work—Neglect of Agent—Attempted Relocation—Fraud.*
    The attempt of an agent, employed to do the annual assessment work on a mining claim, after failure to do the work, to relocate the claim, is a fraud on his principal.

*Relocation in Name of Another—Knowledge of Fraud.*
    When such attempted relocation was in the name of a company of which the agent was manager and superintendent, the company must be held to have had knowledge of the fraud.

( Decided December 9, 1898.)

Appeal from the District Court of Tooele County, Hon. A. N. Cherry, *Judge*.

Action by plaintiff in aid of a protest and adverse claim. From a judgment for the defendant plaintiff appeals. *Affirmed*.

*Messrs. Goodwin & Van Pelt*, for appellant.

Plaintiff's right to the conflict area depends upon either one of two propositions. First, the invalidity of defendant's claim. Second, that defendant's claim as surveyed for patent is not the same as the original location, but that the same was changed or sprung by changing the point of discovery or the corner stakes or both.

"The location must be distinctly marked on the ground, so that its boundaries can be readily traced." Sec. 2324, Rev. Stat. of the U. S. This section construed. *Gleeson* v. *Martin White Mining Co.*, 13 Nev., 444; *Golden Fleece Co.* v. *Cable Cons. Co.*, 12 Nev., 312; *English* v. *Johnson*, 30 Cal., 115; *Atwood* v. *Fricot*, 17 Cal., 44.

The claim is made that defendant through his agents made a bargain with the agent of plaintiff, by which defendant purchased work that had been done by the plaintiff on the conflict area in September, October and November of 1896.

The agent to manage a business cannot sell or dispose of it. *Veseculis* v. *Martin*, 11 Colo. 391; *Henson* v. *Keate, etc., Mercantile Co.*, 48 Mo. Appeals, 214; *Holbrook* v. *Oberne*, 56 Iowa 324.

Can work or improvements made upon a mining claim by a stranger to the title with no present intention that it is for annual labor, be thereafter purchased by the owner of the claim and by relation back be made a compliance with the provisions of the U. S. statute?

Linley on Mines, Vol. 2, Sec. 633, says it cannot; and he cites the opinion of Judge Hallett as an authority in the case of the *Little Gunnell Gold Mining Company* v. *Kimber, et al.*, Morrison's Mining Reports, Vol 1, p. 356; *Doherty* v. *Morris*, 11 Colo. 14.

*E. D. R. Thompson, Esq.*, for respondent.

Defendant's location is a valid location. The positive testimony of witnesses who saw the stakes marking a mining claim is of greater weight, aside from any question of credibility, than the negative testimony of witnesses who did not find any stakes. *McEvoy* v. *Hyman*, 25 Fed., 596.

All the statute intends is that a person seeking to make a subsequent location, can go upon the ground referred to and from the marks made find the boundaries of the claim. *West Granite Mining Co.* v. *Granite Mining Co.*, 7 Mont. 356; *Gleeson* v. *Martin White Mo. Co.*, 13 Nev. 442.

Monuments govern and not description in notice. Location notice is not absolutely essential to valid location. Linley on Mines, Secs. 350–351; Barringer and Adams Law of Mines, p. 234.

Nor is it necessary that notice should be posted at the discovery monument. It should ordinarily be posted where it will be best protected from the elements. Linley on Mines, Sec. 356.

Where a claim has stood for a long time unchallenged and has been developed, the certificate of location is presumptive evidence of discovery, and every reasonable presumption should be indulged in favor of the location. *Cheesman* v. *Hart*, 42 Fed., 98; *Jupiter Mining Co.* v. *Bodie M. Co.*, 11 Fed., 411; *Bryan* v. *McKaig*, 10 Colo., 309.

Was the ground included within defendant's claim subject to location January 1, 1897? (For failure to do the annual assessment work for 1896.) The fraud and deceit of plaintiff and its agent in this case, was practiced with such success, that although the defendant's agent took adequate steps to protect the claim, the representations of plaintiff's agent not only that such work would be done, but had been done by him, induced defendant's agent to leave the ground, which three days afterwards was jumped by appellant. Such fraud and deceit will not be sanctioned by courts of justice. Lindley on Mines, Sec. 407; *Utah Co.* v. *Dickert*, 6 Utah, 206; *Largey* v. *Bartlett*, 44 Pac., 965; *Haws* v. *Victoria Mining Co.*, 160 U. S.

BARTCH, J.

This action was brought to determine the adverse claims of the parties to the right of possession of certain mining ground. The plaintiff claims under the Ranger and Hanley locations, the former having been made in 1891, the latter, January 1, 1897. The defendant claims under the Last Turn location, which was made January 1, 1889, and was practically a relocation of the West Side claim, which was a relocation of the Clipper, the latter having been first located in 1872. It is shown by the evidence that the Ranger claim was located by one E. H. Uhlig, and afterwards conveyed by him to the plaintiff; that the Hanley claim was also located by him for the plaintiff; that at the time of the location of the Hanley, Uhlig was the manager and superintendent of the plaintiff, and had been familiar with the ground covered by the Last Turn, Ranger and Hanley lodes since 1886; and that the Ranger and Hanley locations cover large portions of the area embraced within the Last Turn. The defendant

made application for a patent in the Land Office at Salt Lake City, for the Last Turn claim, and thereupon the plaintiff filed a protest and adverse claim, and brought this action to determine the same. At the trial, the court found the issue in favor of the defendant, and the plaintiff prosecuted this appeal from the judgment and decree.

It is insisted for the appellant that the location of the Last Turn is invalid; that it was not distinctly marked on the ground; and that, as surveyed for patent, it is not the same as its original location.

As to the location of the Last Turn, the court found, in substance, that on January 1, 1889, the defendant, by his agent, discovered on the land, embraced within that claim, which land was the unoccupied public land of the United States, a vein, or lode, bearing gold, silver, and other precious metals, and then located the same as the Last Turn mining claim; that on the same day the locator caused a location notice to be placed at or near the point of discovery, describing the claim, and giving the name of the locator and dimensions of the lode taken; that thereafter the boundaries of the claim were so marked that they could be readily traced; and that a copy of the location notice was recorded in the proper office. There is evidence which shows that a notice of location was placed at the point of discovery; that the discovery was in mineral matter; and that stakes were set indicating the boundaries of the claim. On this point the witness Crouch, who has known the ground in dispute since 1872, testified: "I located the West Side in 1883, and it was staked in the same place as the Clipper. I reset the stakes on the Last Turn. I was up there with Mr. Hopper in May, 1889, and we went up and put up the stakes, the old corners there, we set them up, some of them were down. We set the stakes the same as on the Clipper and West

Side.   In 1891, A. M. Benedict and myself and John Cumberford went over and staked the claim over.   We put them where the old stakes were all the time.   The discovery of the Last Turn is practically at the same point that was made the discovery of the Clipper and the West Side.   It is in mineral.   Out of the incline just north of the discovery I have taken out marketable ore."

Without further reference to the proof in detail, we are of the opinion that there is ample evidence in the record to support the finding of the court, respecting the matter of location, and that the Last Turn mining claim was located substantially in compliance with Sec. 2324, R. S. United States.   Nor does the evidence show that the boundaries of the claim, as surveyed for patent, materially differ from the boundaries of the claim, as originally located.   The location of the Last Turn claim being valid, it is clear that the appellant has no right to any portion of the area in conflict by reason of the Ranger claim, which was located subsequent to the Last Turn.

It is next insisted, however, on behalf of the appellant, that the annual labor was not performed on the Last Turn for 1896, and that therefore the ground included within the claim was subject to location on January 1, 1897, the date on which the Hanley claim was located.   On this point the court found that defendant performed or caused to be performed, at least one hundred dollars' worth of work on the Last Turn claim, for each and every year since the date of its location, except the years 1893 and 1894, for which last mentioned years he filed notices of intention to hold the claim in good faith, in accordance with the statute of the United States.   The court further found that the location of the Hanley lode mining claim was made on January 1, 1897, by the plaintiff, through its agent E. H. Uhlig, wrongfully, and with the fraudu-

lent purpose and intent to cheat and defraud the defend-
ant and deprive him of his title to the Last Turn mining
claim; that the ground included within the limits of the
Hanley lode was not at that time unappropriated land of the
United States; and that the alleged discovery of the Hanley
lode was included within the boundaries of the Last Turn
claim.   The court thus found that the annual labor was
performed on the Last Turn claim for the year 1896, as
that year is included within the finding, that the labor was
done for each year, etc.   There is no dispute respecting
the annual assessment work on that claim for any other
year.

Is then such finding supported by the proof? It is
shown in evidence that Uhlig located the Hanley claim
for the plaintiff as its agent on January 1, 1897, claiming
that the annual assessment work for 1896, on the Last
Turn, had not been done.   He was acquainted with the
ground covered by the Last Turn claim, and had previ-
ously in 1890, done the assessment work for the defend-
ant, and, it appears had agreed to do the work thereon
for 1896.   The witness Crouch, agent of the defendant,
who located the Clipper claim and started the incline
which is now included in the Last Turn, testified that he
wrote Uhlig from Stockton on December 11, 1896, asking
him to do the assessment work on the Last Turn for 1896,
and that on December 21, 1896, he received a reply from
him stating, "I will do the assessment on the Last Turn
and do it in good shape and start right away," and asking
witness if he would be willing to give him or the company
a lease and bond on the property.   Before receiving the
reply, it appears, the witness sent one Ericson to do the
work, and on December 27, 1896, went with Ericson to
see Uhlig, concerning the matter, and in answer to the
question as to what was said by Uhlig, respecting the

work done 'on the Last Turn claim the witness testified: "He told me that he had done so much work there, and it could go on the assessment work of the Last Turn for that year, and I made arrangements with him, he wanted a bond and a lease of me, and I told him I would write to Mr. Benedict, and ask him what terms he would give him, and that I thought he could get one, and if he would let me know when he would come down to my place, I would settle with him for that work, and I thought I could give him a bond and lease of the Last Turn mine, and if he would let me know I would meet him with my horse and buggy here in Tooele, or up the canyon a piece or wherever he said."

The witness, Ericson, concerning the assessment work for 1896, and authority of Uhlig to do the same, testified: "When I was taken over the ground by Mr. Crouch to do the assessment work, December 19, 1896, I first started to shovel snow.   Mr. Uhlig came up on the hill and said. to me in answer to my question in regard to who had done the work, that he had done it, and I told him it appears you have lots of gall, or words to that effect to go and work on a property that you don't own and have no interest in, without authority.   He said that he had authority, and he had a letter down in the cabin and he would bring it up and show it to me, that he had authority from Mr. Crouch to do this work.   That he had done the work with Mr. Crouch's authority.   He said that he had done other work for Mr. Crouch and his associates on the hill, and that he had done more than one hundred dollars' worth here.   That he had adjoining property. · He talked about this being in the center of a group owned by his company, and he wanted to get a lease and bond on the property and he asked me my opinion as to whether he could get it or not.   I told him

that I thought he could.   I told him that under the circumstances as he had done the work and claimed that he had authority, I would notify Mr. Crouch and have him come up and see if the work was satisfactory, the work done on the claim would be legal, and I didn't care to do any more work with the snow there, but I wanted to protect the ground because I came for that purpose.   He said that would be all right.   I wrote to Crouch and he came up immediately on receipt of my letter."

This testimony is corroborated by that of the witness Gill, who was present at one of the conversations with Uhlig.   There is other evidence in the record tending to show that the assessment work for 1896, was done on the Last Turn claim, and from a careful consideration of all the testimony on this branch of the case, we are of the opinion that the court was justified in finding that the annual labor was performed and that the location of the Hanley claim, by Uhlig, for the appellant, was a fraud upon the rights of the respondent.   At the time of the attempted location of the Hanley claim, and prior thereto, Uhlig, although the manager and superintendent of the appellant company, was the trusted agent and employé of the respondent, and was subject to the restrictions and disabilities which his relations to his principal imposed. He could not, therefore, perform work upon the Last Turn claim and agree with his principal that it should be applied as the assessment work for that year, and then, after having lulled his employer into a sense of security as to the title to his property, relocate the ground, and profit by a violation of the confidence which had been reposed in him.   The fact that the location of the Hanley claim was attempted to be made for the appellant company, does not relieve the transaction from the imputation of fraud.   The company, under the facts and circum-

stances disclosed by the record, must be held to have knowledge of the fraud which was being perpetrated. The attempt to so locate the claim was a violation of that duty and honesty which is due from every trusted agent to his employer or principal, and such conduct does not commend itself to a court of equity. This savors of a case where an agent or employé conceives a secret intention of taking possession of the property of his employer for his own benefit, and thus profit by his own failure to perform his duty to his principal. No such unlawful purpose can avail him in a court of justice. 1 Lindley on Mines, Sec. 407; *Mining Co.* v. *Mining Co.*, 6 Utah, 185; *Largey* v. *Bartlett*, 44 Pac. Rep., 962; *Haws* v. *Victoria Copper Min. Co.*, 160 U. S., 303; *Lockhart* v. *Rollins*, 2 Idaho, 503.

We perceive no reversible error in the record. The judgment is affirmed, with costs.

ZANE, C. J. and MINER, J., concur.