STATE, EX REL. MARTIN J. HUFF, v. J. W. McLELLAND, COUNTY CLERK, NANCE COUNTY.

1. **Constitutional Law:** ENROLLED BILL PRIMA FACIE EVIDENCE OF THE PASSAGE OF LAW. The certificate of the presiding officer of a branch of the legislature that a bill has duly passed the house over which he presides is merely *prima facie* evidence of that fact, and evidence may be received to ascertain whether or not the bill actually passed.

2. ——— : EVIDENCE. The journals of the respective houses are
records of the proceedings therein, and if it should appear from
them that a bill had not actually passed, the presumption in
favor of the certificate would be overthrown and the act declared
invalid.

ORIGINAL application for mandamus.

*W. F. Critchfield*, for relator.

*George D. Meikeljohn*, for respondent.

MAXWELL, J.

This is an application for a mandamus to compel the
defendant, who is county clerk of Nance county, to give
notice of an election for register of deeds of said county at
the election to be held therein November 3d, 1885. At
the last session of the legislature an act was passed by both
branches of the legislature creating the office of register of
deeds in counties having not less than fifteen thousand in-
habitants. The bill was then enrolled, and the enrolled
bill, properly certified by the presiding officers and chief
clerks of each house, was duly presented to the governor,
and by him approved. In the bill that passed the legisla-
ture the number of inhabitants in a county entitled to a
register of deeds is expressed in figures " 15,000." In the
bill as enrolled the number given is " 1,500." Laws 1885,
Ch. 41. Comp. Stat., Ch. 18, secs. 77*a–d*. It will thus
be seen that the bill providing for a register of deeds in
counties having 15,000 or more inhabitants was never pre-
sented to or approved by the governor, while the bill
actually approved was not passed by either house. The
question for determination is, Is the enrolled bill, as certi-
fied by the presiding officers of both branches of the legis-
lature and approved by the governor, the exclusive evidence
of what the law is? Or can the court inquire whether the
alleged act was in fact passed and is a valid law? The

question is presented to this court for the first time, and requires an examination of the authorities relating to the subject.

In *Pacific Railroad v. The Governor*, 23 Mo., 353, decided in 1856, a bill to issue the bonds of the state to the amount of $800,000 to aid in the completion of the railroads of the state was passed by the legislature of Missouri and vetoed by the governor. It was alleged that the bill passed over the governor's objection by the requisite majority and had become a law. The court held, Leonard, J., dissenting, that the validity of an enrolled statute, authenticated in the manner pointed out by law by the certificate of the presiding officers of the two houses of assembly that it passed over the governor's veto by the constitutional majority, cannot be impeached by the journals showing a departure from the forms prescribed by the constitution in the reconsideration of the bill. It is said (page 364), "By the common law the statute roll was absolute and conclusive proof of a statute. The record could not be contradicted. It implied absolute verity."

In *Clare v. The State of Iowa*, 5 Iowa, 509, it was held that the original act on file in the office of the secretary of state is the ultimate proof of a statute. The question in that case was between the original statute and an erroneous copy thereof.

In *Duncombe v. Prindle*, 12 Iowa, 2, the object of the action seems to have been to obtain a construction of certain statutes for the purpose of determining whether townships 90–91, ranges 27–30, were within the territorial area of Webster or of Humboldt county, and it was held that the enrolled bill, signed by the presiding officers of the senate and house of representatives and approved by the governor, was the ultimate and conclusive proof of the legislative will, and *Clare v. The State*, 5 Clarke, 509, was cited with approval.

In *Green v. Weller*, 32 Miss., 651, an amendment to the

constitution abolishing the superior court of chancery and transferring full equity powers to the judges of the circuit courts, was passed by the legislature, submitted to the people of the state, and the amendment adopted, and it was held that an enrolled bill, when duly authenticated and signed by the governor, was conclusive evidence of its enactment, and that it cannot be impeached.

In *Evans v. Browne*, 30 Ind., 514, the question arose as to the passage of an act by the requisite majority, and it was held that an enrolled bill, properly authenticated by the proper officers of the respective branches of the legislature and approved by the governor, was conclusive evidence of its existence as a law.

In *Fouke v. Fleming*, 13 Md., 392, the question involved was the validity of certain statutes affecting bills of sale and mortgages of personal property, and it was held in effect that the engrossed bill signed by the governor was better evidence of what the law was than the journals of the two branches.

In *People v. Devlin*, 33 N. Y., 269, an action was brought by the attorney general under a statute to recover from the defendant certain fees and commissions held by him as chamberlain of the city and county of New York. The defense was, that after the passage of the act and before its approval by the governor he, at the request of the assembly, returned the bill to it. Sec. 5 of the act was then stricken out, the bill sent to the senate, which denied the authority of the assembly to change the bill. The court held that the assembly had no power to recall the bill, nor the governor any power to return it. That " when both houses have thus finally passed a bill and sent it to the governor, they have exhausted their powers upon it, except the power of sending it to the governor by the house in which it originated, according to parliamentary law." There are expressions in the opinion that the journals could not be resorted to for the purpose of ascertain-

ing whether an act had been passed by the requisite majority or not; but the question does not seem to have arisen in the case.

In *Pangborn v. Young*, 32 N. J. Law, 29, the question involved was the validity of "An act to establish a police district in the county of Hudson, and to provide for the government thereof." The case cited, in some of its features, resembles the one at bar, yet the court held that it was not competent for the court to go behind the attestation of the presiding officer of each house and the approval of the governor, and admit evidence that the bill actually passed by the legislature was different from the one submitted to and approved by the governor. These decisions are based principally on the common law, and questions relating to constitutional restrictions are not discussed, or but briefly referred to. While at common law the journals of either house are proper evidence of the action of that branch of the legislature upon all matters before it (*Jones v. Randall*, Comp., 17; *Root v. King*, 7 Cowen, 613), yet no case has been cited where it has been held that under the common law power the court would resort to the journals for the purpose of establishing the *invalidity* of an act properly certified by the presiding officers of each house and approved by the executive.

It must be borne in mind that the parliament of England before its separation into two bodies was a high court of judicature, possessed of the general power belonging to such court; and after the separation the power remained with each body, because each was considered to be a court of judicature and exercised the functions of such court. Cooley Const. Lim., 5th Ed., 161. Hence the power of either house of parliament to punish for contempt. Id. *Kelbourne v. Thompson*, 103 U. S., 168. Being a court the record of each house imported absolute verity. In this country, however, legislative bodies do not possess judicial powers. The records, therefore, are not those of a

court; but are, nevertheless, primary evidence to show the action of each house upon any matter before it. The constitution of this and a number of other states require each house to keep a journal of its proceedings, and publish the same, and provides that " no bill shall be passed unless by the assent of a majority of all the members elected to each house of the legislature. And the question upon final passage shall be taken immediately upon its last reading, and the yeas and nays shall be entered on the journal." It is also provided that " every bill and concurrent resolution shall be read at large on three different days in each house," etc.

It is well known that the object of these provisions was to prevent crude and hasty legislation. The journals must show that a majority of all the members elected to each house voted in favor of the passage of a bill before it can become a law. In this state at least, from its earliest legislature, the rules have required the reading in each house of the proceedings of the preceding day in order that the journals might be corrected. The certificate of the presiding officer of each house that a bill has been duly passed by the house over which he presided, therefore, is merely *prima facie* evidence of that fact, and the court may go behind such certificate and inquire into the facts of the case. And this is the view of the supreme court of the United States in *Gardener v. Collector*, 6 Wall., 499, where it is said (page 511) : " We are of opinion, therefore, on principle as well as authority, that whenever a question arises in a court of law of the existence of a statute or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question, always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule."

In *Legg v. Mayor*, 42 Md., 220–225, the case of *Gardiner v. Collector* is cited with approval. It is said : " While the presumption arising from the proper forms of authentication of a statute is very strong, that the statute was regularly and constitutionally enacted by the legislature, the authorities maintain that such presumption may be overcome by competent evidence, and the statute may be shown to have never been constitutionally enacted. And this court has so decided at the present term in the case of *Berry v. Drum Point Railroad*, 41 Md., 446. A valid statute can only be passed in the manner prescribed by the constitution, and where the provisions of that instrument in regard to the manner of enacting laws are wholly disregarded in respect to a particular act it would seem to be a necessary conclusion that the act, though having the forms of authenticity, must be declared to be a nullity. otherwise the express mandatory provisions of the constitution would be of no avail or force whatever."

In *Spangler v. Jacoby*, 14 Ill., 297, it was held that the journals of either branch of the legislature that a particular act was not passed in the mode prescribed by the constitution, and that the signature of the speakers and governor to an act are presumptive that it became a law in pursuance of the constitution ; but that this presumption may be overcome by the journals. To the same effect are *People v. Mahaney*, 13 Mich., 482. *Moody v. State*, 48 Ala., 115. *People v. De Wolf*, 62 Ill., 253. *State v. City of Hastings*, 24 Minn., 78. *Southwick Bank v. Com.*, 26 Penn. St., 446. *Jones v. Hutchinson*, 43 Ala., 721. *Fowler v. Pierce*, 2 Cal., 165. *People v. Supervisors*, 8 N. Y., 318. *Speer v. Plank Road Co.*, 22 Penn. St., 376. Opinion of the Justices, 35 N. H., 579–584. Opinion of the Justices, 45 Id., 607–614. Opinion of the Justices, 52 N. H., 622–625. *People v. Pardy*, 2 Hill, 31. *Prescott v. Board of Trustees*, 19 Ill., 324. *People v. Starne*, 35 Ill., 121. *Coleman v. Dobbins*, 8 Ind., 156–157.

In the last case cited, it is said (page 162): " It is said, *arguendo*, in *Purdy v. The People*, 4 Hill, 384, that *nul tiel* record cannot be pleaded to a statute; and in support of this position several English authorities are cited.  This undoubtedly is the English doctrine, growing out of their peculiar institutions.  Their law-making power is omnipotent.  Not only the common statute law governing the ordinary relations of life, but the British constitution itself, is the creature of parliament.  In this country legislative bodies are created by the constitution.  Thus every act may be tested by that instrument and declared void if not in conformity to its requirements."

· The journals of each house were evidently intended to furnish the public and the courts with the means of ascertaining what was actually done in each branch of the legislature.  They are to be treated as authentic records of the proceedings, and the court may resort to them when the validity of an act is questioned upon the ground of the failure of the legislature to observe a matter of substance in its passage, for the purpose of ascertaining whether the constitutional provisions have been substantially complied with or not.  The certificate of the presiding officers is merely *prima facie* evidence that an act has been duly passed, and will be overthrown if it appears from the journals that it was not.  The necessity for such a provision is apparent, as this is the second act passed at the last session of the legislature which has been before this court where the provisions of the original act were changed and others inserted, apparently without the knowledge of the members. These acts were properly certified when presented to the governor for his approval, but this one at least did not pass. It follows that the act is of no force and effect, and the writ must be denied.

WRIT DENIED.

THE other judges concur.