Case 12—PETITION ORDINARY—February 1.

# Blincoe v. Head, Etc.

APPEAL FROM NELSON CIRCUIT COURT.

1. GARNISHEES, LIABILITY OF.—A garnishee upon whom an order of attachment has been served is not bound to inquire into the regularity of the proceedings upon which that order was issued; and the mere fact that he paid what he owed the defendant, to the plaintiff, will not of itself give to the defendant a right of action against him, whether the payment was made with or without an order of court.

2. COURTS—JURISDICTION—ISSUING ATTACHMENT.—Courts of inferior and limited jurisdiction exercising extraordinary powers under a special statute must conform strictly to the statute granting the power, and nothing in favor of their jurisdiction will be presumed; an attachment issued by a police judge without the affidavit, or bond required by the statute is void, and' he is liable in damages therefor.

3. JUDGES AS MINISTERIAL OFFICERS.—A police judge who is also clerk of his court is both a judicial and a ministerial officer; and in the issuing of an attachment by him as clerk, he is acting as a ministerial officer.

L. S. PENCE AND C. T. ATKINSON FOR APPELLANT.

1. A judge of an inferior court acts in both a judicial and ministerial capacity; he is his own clerk, and in so far as his acts are those of a clerk, they are ministerial, and he is liable in all cases where a clerk would be liable.

2. The plaintiff in the action, Greenwell, sued on an account which was paid, and attached appellant's wages, when he knew he was a housekeeper with a family, and that they were exempt, and procured from the judge a void attachment and procured the payment of the money under that void attachment; under these circumstances he is liable for the damages.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

From the evidence introduced on behalf of appellant, Blincoe, in this case, it appeared that he was in the employ of appellee Miles, who was indebted to him in the sum of twenty dollars, as wages; that Blincoe was a housekeeper, with a family, and on request for payment was informed by Miles that his wages had been garnisheed; that Blincoe then called on appellee, Head, police judge of New Hope, a city of the sixth class, to find out who had sued out the attachment, and was informed by Head that appellee, Greenwell, had done so, and that the trial would come off on the 4th of September; that appellant employed an attorney, who appeared on September 4th to defend the case, and was informed that judgment had been entered in August, and that the money had been paid to Greenwell before the trial; that no summons or order of attachment had been served upon appellant, and he knew nothing of the judgment until some time after it was rendered; that he was not indebted to Greenwell in any amount at the time of the suit; that he had owed him seventeen dollars, but had paid same in money and live stock. It appeared further that the only record to be found in the case was the judgment (which was not signed) in the judge's book, which was as follows:

### ORDER OF ATTACHMENT.

"J. C. Greenwell v. Rowan Blincoe.

1895  July 30.  To amount of account attached in
the hands of E. L. Miles.........$25 85

1895  Aug.  1.  By cash by Miles, $20.00; to plaintiff, $5.85.

"The defendant having been duly summoned and failed to answer it is adjudged by the court that the plaintiff, J. C. Greenwell, recover of the defendant $5.85 and his costs expended, $1.60, with interest at the rate of 6 per cent. from August 21, 1895."

Blincoe brought suit against the appellees for damages, alleging in his petition as twice amended the facts above recited, and that Greenwell had instituted a pretended action before the police judge for the amount of a whisky bill, for the purpose of converting to his own use the wages of plaintiff, which were exempt from attachment; that neither a summons nor an order of attachment was issued against or served upon Blincoe, but that a pretended order of attachment was issued without an affidavit or bond being filed, and was served on Miles, who thereupon paid Blincoe's wages to Greenwell; that this was done by Greenwell and Head fraudulently, maliciously and unlawfully; that the order of attachment and the proceedings thereunder were void, and that he had no notice thereof, and did not appear to the action. He prayed damages in the sum of $125.

A demurrer by Miles to the petition as amended was sustained. If, as alleged in the petition, an order of attachment was served upon him, he, as garnishee, was not bound, in our opinion, to inquire into the regularity of the proceedings upon which that order was issued; and the mere fact that he paid an amount equal to the wages of appellant to Greenwell would not of itself give to Blincoe a right of action against him for damages, whether done with or without an order of court.

The answer of Head and Greenwell is a denial of most

of the averments of the petition, but contains an explicit admission that the order of attachment was issued without bond, averring that it was issued innocently, and without malice toward Blincoe. The averment that it was issued without affidavit is not denied. Moreover, the denial of the non-service of process upon Blincoe is both evasive and imperfect, being a denial "that no process was issued or order of attachment sued out, and deny that such process or order of attachment was never executed on plaintiff."

At the conclusion of the testimony on behalf of appellant, the court sustained a motion to instruct the jury peremptorily for defendants Greenwell and Head. In this we think the court erred. There was evidence for the jury to consider, tending to show that the order of attachment alleged to have been served upon Miles was fraudulently procured, and the case upon this record is much stronger against the police judge.

The police court is one of special and limited jurisdiction, and in granting the attachment it was exercising a special power in derogation of common right, and to be most strictly construed as against the officer. As said in Drake on Attachments (section 85, p. 70), considering the immunity of judicial officers from liability for judicial acts:

"But where a court or officer exercises an extraordinary power, under a special statute prescribing the occasion and mode of its exercise, no such presumption arises; on the contrary, the proceedings of such court or officer will be held illegal, unless they be according to the statute and the facts conferring jurisdiction appear affirmatively.

"When the proceedings of a court which, by its constitu-

tion, has only special and limited jurisdiction, are relied on as supporting any right, all the facts requisite to confer upon it the jurisdiction it exercised must be averred and proved; they can not be presumed."

In the case at bar not only was the court one of inferior and limited jurisdiction, but it was exercising an extraordinary power under a special statute prescribing the occasion and mode of its exercise. Nothing in favor of jurisdiction is to be presumed, and a strict conformity with the statute granting the power must be shown; and as the defendant was not before the court, the writ and all the proceedings under it are *coram non judice* and void.

The same author says upon this subject, p. 73:

"And no court exercising a special and limited power can so determine its right to take jurisdiction through that power in a given case, as to preclude one not a party to the proceedings from questioning that right in a collateral inquiry; for as the validity and conclusiveness of the decision on that point must depend on the authority of the court to make it, the decision can not be conclusive evidence of that authority. This would be saying that the court had jurisdiction to decide, because it had decided that it had jurisdiction."

And in Cooley on Torts (pages 416-17), recently quoted with approval in Glazar v. Hubbard, 42 S. W., 1114, it is said:

"A judge is not such at all times and for all purposes; when he acts he must be clothed with jurisdiction; and acting without this, he is but the individual falsely assuming an authority he does not possess. The officer is judge in cases in which the law has empowered him to act, and in re-

spect to persons lawfully brought before him; but he is not judge when he assumes to decide cases of a class which the law withholds from his cognizance, or cases between persons who are not, either actually or constructively, before him for the purpose. Neither is he exercising the judicial function, when, being empowered to enter one judgment or make one order, he enters or makes one wholly different in nature. When he does this he steps over the boundary of his judicial authority, and is as much out of the protection of the law in respect to the particular act as if he held no office at all. This is a general rule.

\*       \*       \*       \*       \*       \*

"Most of the officers who exercise an inferior authority have no jurisdiction at all until certain preliminary action has been taken which is particularly pointed out by statute; and neither in their case nor in the case of the inferior courts will any intendment of law be made in favor of jurisdiction when their action is called in question, but they must show by their written records that the circumstances existed which authorized them to act."

But in the case at bar the police judge was both a judicial and ministerial officer. Having practically the same jurisdiction as a justice of the peace, he was both judge and clerk; and in the issuance of the order of attachment whereby Blincoe was prevented from collecting the wages due him, he was acting as clerk—a ministerial officer; and the record discloses that he undertook, in direct violation of the statute, to exercise a special and limited power, without the preliminary acts being performed which alone could give him authority to act. If the clerk of the circuit court were to

issue an attachment under such circumstances, without any affidavit being made or bond executed, can it be doubted that he would be liable for the injury which might result therefrom to the defendant in the attachment?

In Connelly v. Woods (31 Kansas, 359), the court held that the justice had the right to rely upon the truthfulness of the affidavit, and was not bound to know at his peril that the affidavit was true, and that the justice had jurisdiction to issue the order. "But this jurisdiction, we think, was merely the jurisdiction of a ministerial officer, and not that of a judicial officer. . ."

Speaking of ministerial officers, who exercise a *quasi* judicial function (as assessors), Judge Cooley says (page 419, Cooley on Torts):

"But where an officer is to proceed upon evidence in writing, and the statute points out what this evidence shall be, it intends that it shall be found of record in the proper office, and not that important public matters shall be left to uncertain parol testimony."

Even assuming that Head was acting judicially, and not ministerially, in issuing the order of attachment, "it is universally conceded that when inferior courts or judicial officers act without jurisdiction the law can give them no protection whatever," (Cooley on Torts, p. 419.)

In Rouss v. Wright (14 Nebraska, p. 461), in a case in which the statute required that the claim on which the attachment was issued should be for a debt or demand arising upon contract, judgment or decree, a justice issued an attachment for damages, and the court said:

"While I do not say that there is any evidence tending to

Blincoe v. Head.

show that the said justice (defendant) acted corruptly, nor I might say wantonly, in issuing said attachment, the papers themselves contain plain evidence of negligence in the issue of said attachment, and if by his negligence the defendant issued the attachment in a case prohibited by statute, it needs not that he should have done it corruptly or even wantonly to render him liable for the damages caused thereby.

"Proceeding by attachment is a harsh remedy given by statute in certain specified cases. By its means, the private property of an alleged debtor may in such cases be seized in advance of a judgment or trial, and held to abide the result of a suit. The law has thus invested certain officers with the power to issue a writ authorizing the seizure and holding of one man's property for an indefinite time to answer to the unproved claim of another. But it has limited the exercise of this power to certain clearly defined cases. While these officers confine themselves to these cases the law protects them even against their own mistakes and errors of judgment, but when they step outside of the circle of duty thus drawn by the letter of the statute, they must answer in damages to such individuals as may suffer from such unauthorized act."

And see the second appeal in the same case, 18 Neb., 236; Addison on Torts, sec. 966, note; Adkins v. Brewer, 3 Cow., 206.

For the reasons given, the judgment is reversed and the cause remanded, with directions to award appellant a new trial and for further proceedings consistent with this opinion.