J. R. WEBSTER, ADMINISTRATOR, V. CITY OF HASTINGS.

FILED NOVEMBER 17, 1898.    No. 9901.

| 56 | 669 |
| d59 | 110 |
| 56 | 669 |
| 60 | 333 |

1. **Statutes: EVIDENCE OF ENACTMENT.** The certificate of the presiding officer of a branch of the legislature that a bill has duly passed the house over which he presides is merely *prima facie* evidence of that fact, and evidence may be received to ascertain whether or not the bill actually passed. Following *State v. McLelland*, 18 Neb. 236.

2. ————: ————: **HOUSE JOURNALS.** The journals of the respective houses are records of the proceedings therein, and if it should appear from them that a bill had not actually passed, the presumption in favor of the certificate would be overthrown and the act declared invalid. Following *State v. McLelland*, 18 Neb. 236.

3. ————: **ACTION FOR DAMAGES: JUDGMENT ON PLEADINGS.** Where a defendant pleaded as a defense to a claim for damages non-compliance with a statutory condition precedent indispensable to a right to maintain such action and plaintiff pleaded in avoidance of the alleged statute that it had never been introduced into either branch of the legislature, and that no bill of the same title or of similar import had ever been read, passed, or voted upon in either of such branches, *held*, that a motion for judgment in favor of the defendant upon the pleadings was improperly sustained.

ERROR from the district court of Kearney county. Tried below before BEALL, J. *Reversed*.

*Webster & Rose, J. L. McPheely, B. F. Smith*, and *Ed L. Adams*, for plaintiff in error.

*L. J. Capps, Tibbets Bros., Morey & Ferris, contra*.

RYAN, C.

This cause has been several times under consideration in this court as between Jefferson H. Foxworthy and the city of Hastings. Its previous history need not at this time be considered, for the questions now presented arise, for the most part, independently of former discussions. On November 16, 1886, Jefferson H. Foxworthy filed in the district court of Adams county an amended petition,

in which he alleged that the defendant, the city of
Hastings, on January 21, 1886, was a city of the second
class under the laws of this state; that said city, on the
date above named and for some time before, had suffered
one of its streets to become and remain dangerous to
persons using it, by reason of accumulations thereon
of ice and snow, though it was the duty of said city to
cause the removal of said obstruction; that after night-
fall of said day said Foxworthy, without fault on his
part, slipped on said ice and snow and by falling was
greatly injured; that said Foxworthy, on July 28, 1886,
as soon as he was sufficiently recovered from his said in-
juries, filed with the city clerk of the city of Hastings
his sworn statement, showing the time, place, and cir-
cumstances of his said injury and the names of the wit-
nesses thereto as fully as known to him, and that his
damages amounted to $20,000. Among other defenses
the defendant alleged that on January 21, 1886, it was
a city of the second class of more than 5,000 and less
than 25,000 inhabitants; that no statement of the claim
for damages alleged to have been sustained by plaintiff
was filed within six months of the date of the alleged
injury, as required by law, and that by reason of the fail-
ure to file such claim the district court was without juris-
diction to try the cause. On July 8, 1896, plaintiff filed
an amended reply, in which, in substance, he denied that
defendant, on January 21, 1886, or prior thereto, was
organized under the laws of Nebraska as a city of the
second class of more than 5,000 and less than 25,000 in-
habitants, and averred that the defendant was a city of
the second class organized under the law entitled "An act
to provide for the organization, government, and powers
of cities of the second class and villages," approved
March 1, 1875; that defendant claims to be incorporated
under what is published as, and purports to be, an act
approved March 5, 1885, entitled "An act to amend the
title, and sections 1, 2, 3, and 4, of an act entitled 'An act
to provide for organization, government, and powers of

cities of the second class having more than ten thousand inhabitants,' approved March 1, 1883" (Session Laws 1885, p. 148, ch. 14), but plaintiff avers that said act is void, for that no bill of such title was ever introduced into either house of said legislative assembly, nor was any bill of that, or yet of any, title expressing its subject or purpose ever read or voted upon or passed, or the title thereof ever agreed to, in or by either house of said legislative assembly." There were in said reply the following averments: "The act to which said act of March 5, 1885, purports to be amendatory, entitled 'An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants, approved March 1, 1883,' was and is unconstitutional and void, because its subject-matter is not expressed in its title and it conflicts with the title and provisions of an act to provide for the organization, government, and powers of cities and villages, approved March 1, 1879, which was not and is not repealed nor by it referred to or amended, and was and is yet in force, and no law existed, or now exists, requiring plaintiff to file his claim in the city clerk's office." On May 17, 1897, the defendant filed the following motion: "Comes now the defendant and moves the court that judgment be rendered in favor of defendant on the pleadings in this cause and this action be dismissed for the following reasons: (1.) Under the issues as joined the defendant is entitled to judgment. (2.) Under its pleadings a judgment in favor of plaintiff could not be sustained. (3.) Plaintiff's petition does not state facts sufficient to constitute a cause of action. (4.) The issues in this cause, as disclosed by the pleadings, have been adjudicated in favor of defendant in this action. (5.) The new matter in plaintiff's amended reply is not proper to be pleaded in a reply, nor can it aid the petition or be considered by the court." The action taken with reference to this motion is described in the following journal entry: "And now on this 18th day of May, 1897, the same being one of the days

of the May, 1897, term of this court, this cause came on to be heard upon the motion of defendant for judgment on the pleadings, and after argument by counsel for both plaintiff and defendant, the court, being fully advised, sustains said motion and finds for the defendant on the pleadings." A motion for a new trial was filed by plaintiff which presented the grounds relied upon in his reply, and this motion, as the record shows, was overruled and an exception was taken to this ruling, whereupon there was a judgment dismissing plaintiff's action and taxing the costs against him. After these proceedings were had plaintiff died, and in this court the action has been revived in the name of plaintiff's administrator.

It is urged by the defendant that the averment of the filing of a notice of plaintiff's claim was essential to the statement of plaintiff's right to bring suit. On the theory of the defendant, that the statute required this step to be taken, this position may be conceded to be correct. On the other hand, if, as plaintiff alleged, there was in existence no statute requiring the filing of notice of plaintiff's claim, it was not incumbent upon plaintiff, in stating his cause of action, to allege that a claim for damages had been filed with the city clerk of defendant. Whether or not there was such a failure to comply with constitutional requirements regulating the enactment of statutes was a question presented by the reply of plaintiff, in which it was distinctly averred that the act requiring the filing of a claim was void and never had an existence, for the reason that no bill of such title was ever introduced into either house of the legislative assembly, neither was that bill nor any bill of that, or yet of any, title expressing its subject or purpose ever read or voted upon or passed, or the title thereof agreed to, in or by either house of said legislative assembly. Manifestly, if these averments were true, the statute under which the defendant insisted upon the filing of a claim with the city clerk was as ineffective as though it had never existed. If this assumption of plaintiff that there was no statute

was correct, he was not required to assert and prove a
negative. The defendant, by answer, first asserted the
existence of this statute, plaintiff denied its existence and
alleged facts to show it had never become a law, and
these we shall now consider.

It is provided by section 418, Code of Civil Procedure,
as follows: "The proceedings of the legislature of this
state, or any state of the union, or of the United States,
or of any foreign government are proved by the journals
of those bodies respectively, or of either branch thereof,
and either by copies officially certified by the clerk of the
house in which the proceedings were had or by a copy
purporting to have been printed by their order." In
*State v. McLelland,* 18 Neb. 236, the syllabus, which re-
flected the full purport of the opinion correctly, was in
this language: "The certificate of the presiding officer
of a branch of the legislature that a bill has duly passed
the house over which he presides is merely *prima facie*
evidence of that fact, and evidence may be received to
ascertain whether or not the bill actually passed." "The
journals of the respective houses are records of the pro-
ceedings therein, and if it should appear from them that
a bill had not actually passed, the presumption in favor
of the certificate would be overthrown and the act de-
clared invalid." In *State v. Robinson,* 20 Neb. 96, it was
said: "It could serve no good purpose to re-examine
the question or rediscuss the principle involved, as we are
satisfied with the reasoning of Judge MAXWELL in *State
v. McLelland.*" In *State v. Moore,* 37 Neb. 13, with doubts
intimated as to the advisability of adopting such a rule,
it was recognized as having been settled by the decisions
of this court in this state. In *Re Granger,* 56 Neb. 260,
the writer has intimated his disapproval of the rule, and
yet then, as now, recognizing it as established, he feels
bound to express the views of this court as controlled by
its former opinions. The defendant, by its motion, con-
ceded that every fact well pleaded by plaintiff was sus-
ceptible of proof, and, as we have already seen, this court

47

is committed to the doctrine that evidence was admissible to show such pleaded non-compliance with constitutional provision as rendered abortive the attempted legislation. The judgment of the district court was therefore erroneous and is accordingly reversed, and the cause is remanded for further proceedings not inconsistent with the view of this court as above expressed.

REVERSED AND REMANDED.

RAGAN, C., not sitting.

IRVINE, C., dissenting.

If the maxim *stare decisis* is to be regarded, there is no escaping the conclusion expressed in Commissioner RYAN's opinion. I concur in his view, that the past decisions of the court compel that conclusion, but I more heartily concur in his expression of disapproval of the principle of those decisions. *State v. McLelland,* 18 Neb. 236, plainly declares that the certificate of the presiding officer of a branch of the legislature that a bill duly passed his house is only *prima facie* evidence of that fact; that it may be rebutted by other evidence. Other cases have followed that rule. But we are in this case for the first time confronted with its mischievous results. If the fact of the due enactment of a statute is to be tried on any available evidence, certain results follow of such character as to bid us pause and re-examine our premises. Being an issue of fact it is to be tried by the triers of fact,—in many cases a jury. Being an issue of fact its determination in one court or in one case will be no bar to its retrial in other courts, or in the same court, in an action where the parties are different. One jury or one judge may, on conflicting evidence, find that a statute was passed and is therefore the law of the state. Another may find that it was not passed and is therefore inoperative. The law will be one thing for one man and another thing for another man, depending upon the dili-

gence of his counsel and the temper, or perhaps prejudice, of a jury. A city will be governed by one law when A sues it and by a different law when B sues it. No issue of bonds will be valid until after their maturity, when in a suit thereon a jury shall say that· the legislature passed the law authorizing the issue, and then they will be valid only as to the specific bonds in action. I need not amplify the illustrations. Such a state of affairs produces a confusion in our statute law suggesting anarchy. The court should not hesitate to overrule a false precedent, or any number of false precedents, when the mischief of following them is manifestly greater than that flowing from their disturbance. Certainly the uncertainty of the law from the disturbance of three or four precedents relating to a rule of evidence is less mischievous than a perpetual uncertainty as to the very existence of every statute in the books.

There are three views which may be taken of the subject. One is that the enrolled act deposited with the secretary of state and bearing the certificates of the presiding officers of the two houses and the approval of the governor is the final and unimpeachable evidence not only of the terms of the act, but of the fact of its due enactment. A second is that the court must take notice of the passage of an act, but may inform itself from other sources than the enrolled act. The third view is that formerly taken by this court, ·that the question is one of evidence, the enrolled act establishing a bare presumption. The second view is one taken by many courts, but as between that and the third the latter is more logical. Whether or not an act passed the legislature is clearly a question of fact, and if it be one of doubt to be determined upon conflicting data it should be tried as an issue of fact. The uncertainty would be no greater than to permit its determination unassisted by rules of evidence by the process of judicial notice. I think, however, that the first view is the only one which is safe and the only one which can be reached by an investigation based

either on history or on fixed legal principles. I do not propose to extensively discuss the rationale of the question. It is no new theme. In a foot-note to *Field v. Clark*, 143 U. S. 649, are collected the decisions of nearly all the American courts on the subject, and it is hardly possible to add anything to the reasons advanced in those decisions. By a recurrence to *State v. McLelland, supra*, it will be found that this court was largely controlled in its conclusion by *Gardner v. Collector*, 6 Wall. [U. S.] 499. In that case there was no attempt to impeach the enrolled act. There was no dispute as to the existence of the statute or its due enactment. The question was as to the time of its approval. It bore the following signature: "Approved Dec. 24, Abraham Lincoln." The contention was that the court could not look beyond this to ascertain the year of its approval, although the journals of congress showed that it was passed in 1861 and the records of the secretary of state showed that it was deposited with him December 26 in that year. The constitution did not require the president to certify the time of his approval. It provided merely for his signing the bill, and all the court held was that the act was not defeated by the absence of a certificate not required by the constitution, and that extrinsic facts might be resorted to to fix the time of the approval, not to impeach the enrolled act or show irregularity in its passage. This was the construction placed upon the case in *Field v. Clark*, 143 U. S. 649, when the supreme court of the United States, having before it most exhaustive briefs citing the whole multitude of cases on the subject, announced the rule that the enrolled act, attested by the presiding officers of the two houses, bearing the approval of the president and deposited in the department of state, is the unimpeachable proof of its due enactment as enrolled. Many of the decisions of the state courts, including our own, to the contrary, have been thus based wholly or in part on an utter misconception of *Gardner v. Collector*. Our constitution provides (art. 3, sec. 11): "The

presiding officer of each house shall sign in the presence of the house over which he presides, while the same is in session and capable of transacting business, all bills and concurrent resolutions passed by the legislature." There can be no doubt that this was placed in the constitution for the very purpose of effecting a solemn authentication of the fact of passage of a bill. The presiding officer must not only attest it, but he must do so in the presence of the house while it is in session and capable of transacting business. The authentication thus obtained becomes the act of the house itself, and could have been provided for no other purpose than to make it the final evidence of the fact. The constitutional requirement for keeping and publishing legislative journals is for the purpose of insuring publicity of the proceedings. It was plainly adopted because of the practice maintained in parliament until recent times of keeping those proceedings secret. Those journals were not meant to impeach in after years the solemn authentication provided for in the other section. If the rule in *Field v. Clark*, which is that adopted by very many of the ablest state courts, be followed, the statute law must always be certain. The only mischief which could possibly result would flow from the fraudulent enrollment of a bill. If the provisions of article 3, section 11, of the constitution shall be regarded in their spirit by the presiding officers and members of the legislature, that evil can be avoided. But if it be disregarded, which we cannot presume against a co-ordinate branch of the state government, the mischief of an occasional statute surreptitiously authenticated is incalculably less than the mischief of perpetual uncertainty as to the existence of any statute.

SULLIVAN, J., concurs in the foregoing dissenting opinion.