State, ex rel. Casper, v. Moore.

---

STATE OF NEBRASKA, EX REL. C. D. CASPER ET AL., V. EUGENE MOORE, AUDITOR OF PUBLIC ACCOUNTS.

FILED MAY 9, 1893.    No. 6169.

1. **Statutes:** GENERAL APPROPRIATION BILL: ITEM FOR IMPEACHMENT EXPENSES: ERROR OF ENROLLING CLERK. Where a general appropriation bill, carrying an item of $15,000 for a specific purpose, was duly passed by both houses of the legislature, but by a clerical error of an enrolling clerk the $15,000 was afterwards changed to $25,000, and the bill was in this condition presented to and signed by the presiding officers of the two houses, and approved by the governor, *held*, that the bill appropriated $15,000 for the purpose specified therein.

2. ———: ENACTMENT: REGULARITY OF LEGISLATIVE PROCEEDINGS. Where a bill has been attested by the signature of the presiding officers of both branches of the legislature, and signed by the governor, it will not be declared invalid because of irregularities in the proceedings of the legislature where no express provision of the constitution has been violated.

3. ———: ———: ———: ERROR OF ENROLLING CLERK. When the journals of the two houses of the legislature and the acts of the governor clearly manifest the intention of the law-making branches of the government, the courts will not permit the will of the people so manifested to be thwarted by the error or dishonesty of an enrolling clerk.

CONTROVERSY involving the validity of the legislative appropriation of 1893 for impeachment proceedings, submitted to the supreme court under the provisions of section 567 of the Civil Code.

*George W. Doane, S. B. Pound, W. L. Greene,* and *G. M. Lambertson,* for relators.

*W. S. Summers, Deputy and Acting Attorney General,* contra.

. BY THE COMMISSION.

This case was submitted under section 567 of the Code of Civil Procedure, upon an agreed statement of facts substantially as follows:

"That in the general appropriation bill known as house roll No. 207 of the twenty-third session of the legislature of the state of Nebraska, after the said bill had been sent to the senate and was there amended and returned to the house of representatives, the house of representatives then further amended the bill by including an item therein of $25,000 for the purpose of paying the expenses of impeachment proceedings; that said bill then went to the senate for concurrence in the house amendments, and was referred to a conference committee of the members of both houses and by said conference committee was amended by reducing the amount of said appropriation from $25,000 to $15,000 as shown by its report, which report of said committee of conference was adopted by both houses after various conferences had thereon; that in enrolling said bill the enrolling clerk, by a clerical error, included in said enrolled bill said item to cover the expenses of said impeachment proceedings at the sum of $25,000 instead of $15,000, as reported by said conference committee and adopted by both houses, which bill as enrolled was signed by the presiding officers of both houses with an emergency clause attached thereto, and was

thereupon approved and signed by the governor on April 10, 1893."

It will be observed from the facts set forth in the foregoing stipulation that the general appropriation bill, as passed by both houses of the legislature, carried an appropriation for impeachment proceedings of $15,000, but that when the bill reached the committee on engrossed and enrolled bills, by a clerical error the $15,000 was changed to $25,000, and in this condition it was signed by the presiding officers of the two houses and by the governor.

The question then before us is this: Does this bill appropriate $25,000 for impeachment proceedings, or does it appropriate $15,000 for such proceedings; or does it fail to appropriate anything? Were the question a new one in this state, we would say that a bill duly deposited in the office of the secretary of state, bearing the signatures of the presiding officers of the respective houses of the legislature and of the governor, imports absolute verity, and that the courts could not look beyond the signatures of these officers to ascertain what either house has done as to any items in said bill. There are numerous authorities holding this view; amongst others, the supreme court of the United States. See *Field v. Clark*, 143 U. S., 649, where it is said on page 672: "The signing by the speaker of the house of representatives, and by the president of the senate, in open session, of an enrolled bill is an official attestation by the two houses of such bill as one that has passed congress. It is a declaration by the two houses through their presiding officers, to the president, that a bill, thus attested, has received, in due form, the sanction of the legislative branch of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass congress shall be presented to him. And when a bill thus attested receives his approval, and is deposited in the public archives, its authentication as a bill that has passed congress should be deemed complete and

unimpeachable.   As the president has no authority to approve a bill not passed by congress, an enrolled act in the custody of the secretary of state, and having the official attestations of the speaker of the house of representatives, of the president of the senate, and of the president of the United States, carries on its face a solemn assurance by the legislative and executive departments of the government, charged, respectively, with the duty of enacting and executing the laws, that it was passed by congress.   The respect due to co-equal and independent departments requires the judicial department to act upon that assurance, and to accept, as having passed congress, all bills authenticated in the manner stated, leaving the courts to determine, when the question properly arises, whether the act, so authenticated, is in conformity with the constitution."

The supreme court of Nebraska, however, has taken a different view of this subject, as will be seen from an examination of *State, ex rel. Huff, v. McLelland,* 18 Neb., 236, where it is said : "The certificate of the presiding officer of a branch of the legislature, that a bill has duly passed the house over which he presides, is merely *prima facie* evidence of that fact, and evidence may be received to ascertain whether or not the bill actually passed.   The journals of the respective houses are records of the proceedings therein, and if it should appear from them that a bill had not actually passed, the presumption in favor of the certificate would be overthrown and the act declared invalid." (See also *State, ex rel. Poole, v. Robinson,* 20 Neb., 96.)

It is now settled that this court will look into the records and journals of the two houses of the legislature to ascertain if they have complied with the constitutional provisions of the state with reference to the enactment of a law.   When this is done, it becomes evident that the senate did not at any time, nor did the house of representatives upon the final consideration of the bill, agree to an

State, ex rel. Casper, v. Moore.

appropriation of $25,000, so that the act cannot be con-
strued as an appropriation of this sum for want of con-
currence of all the law-making branches. (*State, ex rel.
Marlay, v. Liedtke,* 9 Neb., 462.) It is equally clear that
both houses did concur in the appropriation of $15,000.
This appropriation must also fail, unless approved by the
governor, or by the bill's becoming a law. in one of the
ways provided by the constitution without his approval.
The governor, by signing the bill as enrolled, expressed his
approval of an appropriation of $25,000. We think that
this sum being one greater than that provided by the leg-
islature, his approval thereof included an approval of the
lesser sum.

In *State, ex rel. Huff, v. McLelland, supra,* it was held
that a bill creating the office of register of deeds for coun-
ties having not less than 15,000 inhabitants did not become
a law because the enrolled bill as signed by the governor
expressed the number of inhabitants as 1,500 instead of
15,000. The error here was in a matter of description, one
essential to the merits of the bill, and the enrolled bill as
signed was different in character from that passed by the
legislature. In this case, the error related to no matter of
description, and could not have influenced the governor to
approve the bill, when a correct enrollment would lead
him to veto it. By giving the law this interpretation, we
enforce the clearly expressed will of the people as mani-
fested by their legislative officers. Any other conclusion
would permit such clearly expressed will to be thwarted
by the carelessness or dishonesty of a clerk in the enrolling
rooms. It was to avoid this danger that this court adopted
the doctrine that the enrolled act is only *prima facie* evi-
dence of the enactment of a statute.

It was contended in argument that the item in question
should not have been incorporated as an item in the gen-
eral appropriation bill, and that the title of the bill was
not broad enough to comprehend it fairly within its terms.

The title of the bill reads as follows: "A bill for an act making an appropriation for the current expenses of the state government for the year ending March 31, 1895, and to pay miscellaneous items of indebtedness owing by the state of Nebraska." This title was comprehensive enough to include any current expenses incident to the due administration of the affairs of the state. The trial upon impeachment charges preferred by the legislature against state officers and ex-officers before the supreme court is most certainly a part of such expenses. In the title of no appropriation bill would it be practicable to set forth in detail the items provided for, and a general statement, such as above occurs, is sufficient for the purposes contemplated. It may further be observed in this connection that, on account of the impracticability of so doing, it is not required that each item of expenditure proposed should be the subject-matter of a separate bill.

It was also insisted that the house of representatives, having passed the original appropriation bill, and sent it to the senate for concurrence, without which it was returned to the house, the house was powerless to amend such portion of the bill as it had previously passed, its right of amendment being confined to such amendments as the senate had engrafted into the bill as to which its concurrence had been asked. There was cited a very respectable array of authorities on this proposition, and as fixing a rule for the government of these bodies, we are not prepared to say that this contention was without merit. We do not understand, however, that as to the mere routine of parliamentary business, courts are required to interfere with legislative procedure, where no substantive requirement of the constitution has been· violated. The signature of the officers of the respective branches of the legislature, attesting the due passage of the bill in question, precludes an inquiry in that direction.

It follows, therefore, that house roll No. 207 of the

twenty-third session of the legislature of the state of Nebraska, as the same is now on file in the office of the secretary of state, appropriated $15,000 for impeachment expenses.