STATE OF NEBRASKA, EX REL. DOUGLAS COUNTY, v. ALBYN L. FRANK.

FILED JUNE 7, 1900.  No. 11,384.

1. Enactment of a Law: EVIDENCE: ENROLLMENT: AUTHENTICA-TION: APPROVAL. The enrollment, authentication and approval of an act of the legislature are *prima facie* evidence of its due enactment.

2. ——: ——: JOURNALS. The legislative journals may be looked into for the purpose of ascertaining whether a law was properly enacted.

3. ——: ——: SILENCE OF JOURNAL. The silence of the legislative journals is not conclusive evidence of the non-existence of a fact, which ought to be recorded therein, regarding the enactment of a law.

4. ——: ——: DEFECT: MUTILATION. When the legislative journals are defective, mutilated or incomplete, their silence will not, as against the enrolled bill on file in the office of the secretary of state, be taken as evidence that the yeas and nays on the final passage of the bill were not recorded as required by the constitution.

5. ——: EVIDENCE ALIUNDE. In such case, it may be shown by extrinsic evidence that on the final passage of a bill the yeas and nays were taken and duly recorded.

6. Constitutional Law: GENERAL LAW: LOCAL EFFECT. A law, general in character, although affecting but one city or county, is not violative of the provision of the constitution against special legislation.

7. Fees: STATUTE: AMENDMENT. The act of 1899 (Session Laws, ch. 31), amending section 3, chapter 28, Compiled Statutes, 1897, entitled "Fees," does not amend or change section 1 of said chapter.

8. **Deputies:** STATUTE: AMENDMENT. Nor does such amendatory act trench upon or amend section 43, chapter 19, Compiled Statutes, 1899, respecting the appointment of deputies by clerks of the district court.

9. **Clerk:** COMPENSATION: STATUTE: CONSTITUTION. The act of 1899 (Session Laws, ch. 31), amending section 3, chapter 28, Compiled Statutes, 1897, entitled "Fees," limiting the compensation which the clerk of the district court may receive for his services, is germane to the section amended, and its provisions are within its title.

ERROR to the district court for Douglas county. Tried below before ESTELLE, J. *Reversed.*

*George W. Shields,* for plaintiff in error:

Courts will not declare an act unconstitutional, unless it appears to be so beyond a reasonable doubt. *Pleuler v. State,* 11 Nebr., 547.

But is it essential that there should be affirmative proof that the house journal ever did contain a record of concurrence? *Hull v. Miller,* 4 Nebr., 505; *State v. Moore,* 37 Nebr., 13; *State v. Liedtke,* 9 Nebr., 490.

As to special legislation: *State v. Stuht,* 52 Nebr., 209; *County of Douglas v. Timme,* 32 Nebr., 272.

The next point made by the respondent in the court below is that the law in question amends section 1 of chapter 28, and also amends section 43 of chapter 19, both of the Compiled Statutes of 1897; and, because the bill (House Roll 251) did not contain these two sections as amended, nor repeal them, it is inimical to that part of section 11, article 3, of the constitution, providing that "no law shall be amended, unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." I shall not claim that the bill is valid if it can be said that it amended either of the sections last above referred to, but I insist that it does not amend nor attempt to amend either of those sections. This court has said in deciding many cases that the object of the constitutional provision last

State v. Frank.

above referred to was to give certainty to the law by removing all apparently conflicting provisions. *State v. Wish*, 15 Nebr., 448; *State v. City of Kearney*, 49 Nebr., 325; *State v. Babcock*, 23 Nebr., 128; *Fenton v. Yule*, 27 Nebr., 758.

The bill is not broader than its title. *State v. Lancaster County*, 6 Nebr., 485; *Boggs v. Washington County*, 10 Nebr., 297; *Bonorden v. Kriz*, 13 Nebr., 121; *Herold v. State*, 21 Nebr., 50; *Perry v. Gross*, 25 Nebr., 826; *Poffenbarger v. Smith*, 27 Nebr., 788; *Stoppert v. Nierle*, 45 Nebr., 105; *Affholder v. State*, 51 Nebr., 91; *State v. Cornell*, 54 Nebr., 72.

*Ed P. Smith* and *Greene & Breckenridge, contra:*

Was House Roll No. 251 passed by the legislature in the manner and form required by the constitution? Constitution, art. 3, sec. 10; Cooley, Constitutional Limitations [5th ed.], p. 169; *Ryan v. Lynch*, 68 Ill., 160; *Steckert v. East Saginaw*, 22 Mich., 104; *People v. Commissioners*, 54 N. Y., 276; *Cohn v. Kingsley*, 38 L. R. A., 74; *Oakland Paving Co. v. Hilton*, 69 Cal., 479; *Koehler v. Hill*, 60 Ia., 543; *Hunt v. State*, 22 Tex. App., 396; *State v. Buckley*, 54 Ala., 599; *Town of South Ottawa v. Perkins*, 94 U. S., 260; *Post v. Supervisors*, 105 U. S., 667; *People v. Mahaney*, 13 Mich., 481; *Rode v. Phelps*, 80 Mich., 598; *Moody v. State*, 48 Ala., 115.

The enrolled bill can be impeached by the house and senate journals, and can not be impeached by anything else. Such is the rule laid down with emphasis in the cases of *In re Granger*, 56 Nebr., 260; *State v. Abbott*, 59 Nebr., 106; *Webster v. City of Hastings*, 59 Nebr., 563.

If the requirements of the constitution with respect to the enactment and passage of bills were observed in the case of House Roll 251, it is inherently unconstitutional and void. House Roll No. 251 is special legislation. Section 15 of article 3 of the constitution prohibits the "creating, increasing and decreasing fees, percentage or allowances of public officers during the term for

which said officers are elected or appointed." Section 16 provides: "Nor shall the compensation of any public officer be increased or diminished during his term of office." It is held in *County of Douglas v. Timme*, 32 Nebr., 272, that the provision quoted from section 16 "applies alone to those officers whose offices were created by the constitution." The office of the clerk of the district court is not created by the constitution, and if the construction given section 16 is followed, then section 15 applies to offices created by the legislature; and it is insisted that, so far as this respondent is concerned, this act is as absolutely a special law as though Albyn L. Frank had been named therein, because the legislature will be credited with knowing, not much it is true, but at least that there was but one county in the state of Nebraska having more than one hundred thousand inhabitants.

The additions in House Roll No. 251, to section 3 of chapter 28 of the Compiled Statutes of 1897, are not germane to the section amended. House Roll No. 251 is amendatory of other sections besides section 3 of chapter 28, not contained or referred to therein. *Trumble v. Trumble*, 37 Nebr., 340.

SULLIVAN, J.

This proceeding in error brings before us for review a judgment of the district court denying the application of the relator for a writ of mandamus requiring the respondent, Albyn L. Frank, as clerk of the district court for Douglas county, to make a report, under oath, of the fees received by him as such clerk during the quarter ending on the first Tuesday of January, 1900. The question for decision is the validity of an act of the last legislature amending section 3 of chapter 28, Compiled Statutes of 1897. The original act on the subject of fees was adopted in 1865 under the title "An act to regulate the salaries and fees of certain officers in the territory of Nebraska." The first section declared then, as it declares now, that "The salaries and fees of the several

officers hereinafter named shall be as follows." Origi-
nally the third section did nothing more than fix the
charges and compensation of the clerk of the district
court for official services.  But in 1899 there was
grafted upon this section the following amendment: "If
the fees of said clerk shall exceed sixteen hundred ($1600)
dollars per annum in counties having less than twenty-
five thousand inhabitants or if the fees shall exceed three
thousand ($3,000) dollars per annum in counties having
more than twenty-five thousand inhabitants and less
than fifty thousand inhabitants, or if the fees shall ex-
ceed thirty-five hundred ($3500) dollars per annum, in
counties having more than fifty thousand inhabitants and
less than one hundred thousand inhabitants, or if the
fees shall exceed five thousand ($5,000) dollars per annum
in counties having more than one hundred thousand in-
habitants, said clerk shall pay such excess into the treas-
ury of the county in which he holds his office.  Provided
also that the clerk of the district court of each county
shall on the first Tuesday of January, April, July, and
October of each year make a report to the board of
county commissioners under oath showing the different
items of fees received, from whom, at what time, and for
what service, and the total amount of fees received by
such officer since the last report, and also the amount
received for the current year.  Provided further that if
the county board of commissioners think necessary, said
clerk may be allowed one deputy at a compensation not
to exceed one half that allowed his principal; and such
other assistants at such a compensation and for such
time as aforesaid board may allow, and that none of said
clerks, deputies or assistants shall receive any other com-
pensation than that accruing to their office."  Counsel
for respondent concede that their client is within the pro-
visions of the foregoing amendment, and that he must,
if the act is valid, render to the county board of Douglas
county a sworn statement of the fees which he received
during the last quarter of 1899.  It is, however, insisted

.with great earnestness and confidence that the act is of no validity because, in its adoption, the legislature disregarded. certain mandatory provisions of the organic law.

The first two objections to the statute may be considered together. They are (1) that the journal of the house of representatives does not show the concurrence of that body in a certain senate amendment which became a part of the enrolled bill; and (2) that upon the final passage of the bill in the house the yeas and nays were not entered upon the journal, as required by section 10, article 3, of the constitution. There is some contrariety of judicial opinion touching the power of the courts to annul a statute for a failure on the part of the legislature to evidence its proceedings in the manner prescribed by the constitution; and the adjudged cases are almost evenly divided as to what constitutes the best evidence of the statutory law. Some courts, among them the supreme court of the United States, hold that the enrolled bill on file in the office of the secretary of state, bearing the certificate of the presiding officers of the two branches of the legislature and the approval of the governor, imports absolute verity and precludes any inquiry into the procedure by which it was adopted. *Field v. Clark,* 143 U. S., 649; *Standard Underground Cable Co. v. Attorney General,* 46 N. J. Eq., 270; *Sherman v. Story,* 30 Cal., 253, 256; *Weeks v. Smith,* 81 Me., 538; *Ex parte Wren,* 63 Miss., 512; *State v. Glenn,* 18 Nev., 34; *People v. Marlborough Commissioners,* 54 N. Y., 276; *Williams v. Taylor,* 83 Tex., 667. The rule in other jurisdictions is that the enrollment, authentication and approval of a bill, found in the proper repository, are only *prima facie* evidence of its due enactment; and that the legislative journals, if properly kept, contain the authentic history of the measure. *Henderson v. State,* 94 Ala., 95; *People v. Loewenthal,* 93 Ill., 191; *State v. Francis,* 26 Kan., 724; *People v. Mahaney,* 13 Mich., 481; *Osburn v. Staley,* 5 W. Va., 85; *Meracle v. Down,* 64 Wis., 323; *State v. Platt,* 2 S. Car., 150. While there is much reason for holding that a knowledge of the

legislative journals should not be essential to a knowledge of the written law, this court is now too firmly committed to the doctrine of the cases last cited to justify us in accepting the certificates of the legislature as conclusive evidence that it has performed its constitutional duty. *State v. McLelland,* 18 Nebr., 236; *State v. Robinson,* 20 Nebr., 96; *State v. Moore,* 37 Nebr., 13; *In re Granger,* 56 Nebr., 260; *Webster v. City of Hastings,* 56 Nebr., 669; *State v. Abbott,* 59 Nebr., 106; *Webster v. City of Hastings,* 59 Nebr., 563. These cases hold that the records of the lawmaking body may be looked into for the purpose of ascertaining whether a statute has been constitutionally enacted; but they do not decide, or give countenance to the claim, that the silence of the journals, or either of them, is conclusive evidence of the non-existence of any fact which ought to be recorded therein. What they decide is that the journals are unimpeachable evidence of what they contain; not that their silence convicts the legislature of having violated the constitution. Every presumption is in favor of the regularity of legislative proceedings; and it is rather to be inferred that the journals are imperfect records of what was done than that the legislature failed to perform the more solemn and important duties enjoined upon it by the constitution. In *Ex parte Howard-Harrison Iron Co.,* 119 Ala., 484, 491, 24 So. Rep., 516, cited in *State v. Abbott, supra,* it is said: "Of course the presumption is that the bill signed by the presiding officers of the two houses and approved by the governor is the bill which the two houses concurred in passing, and the contrary must be made to affirmatively appear before a different conclusion can be justified or supported. So here, it must be made to affirmatively appear that amendments of the house bill in question were adopted by the senate and were not concurred in by the house." The enrolled bill has its own credentials; it bears about it legal evidence that it is a valid law; and this evidence is so cogent and convincing that it can not be overthrown by the production of a leg-

islative journal that does not speak, but is silent. Such seems to be the conclusion reached by a majority of the courts; and such, certainly, is the trend of modern authority. To hold otherwise would be to permit a mute witness to prevail over evidence which is not only positive, but of so satisfactory a character that all English and most American courts regard it as ultimate and indisputable. But it is argued that whatever may be the effect of a failure to record the ordinary proceedings of the legislature, the vote of either house, upon the final passage of a bill, can not be supplied by presumption, because the constitution in express terms requires that the yeas and nays shall be entered upon the journal. This view of the matter is supported by a considerable number of adjudged cases, and for present purposes we will assume that it is correct. What then is the situation with which we have to deal? From the evidence given at the trial, the district court made special findings of fact. Among them is this:

"IV. The court further finds that said chapter 31 of the Session Laws of 1899, known as House Roll No. 251, originated in the house of representatives and the same was placed on its final passage in said house on March 17, 1899, and that the yeas and nays were at the time called and duly entered on the journal of said house; that said bill was then transmitted to the senate where the same was duly considered and passed with amendments thereto, on the 31st day of March, 1899."

Counsel for Frank insist that it is the duty of this court to take judicial notice of the legislative journals, and that a finding contrary to our judicial knowledge can not stand. They also contend that, since the house journal does not show the yea and nay vote upon the final passage of the bill, we are bound to declare, without further inquiry, that the constitutional requirement was not observed, and that the law is, therefore, null. In other words, respondent's position is that we must look in the office of the secretary of state for a record of the vote,

and, if we do not find it, must say that it does not exist now, and that it never did exist. We are not willing to go quite so far for the purpose of overthrowing a duly authenticated act of the legislature. The finding of the trial court is amply supported by competent evidence, and is not contradicted by any fact of which this court has cognizance. It appears clearly from the bill of exceptions that the yeas and nays were entered upon the journal at the proper time, and that a part of the journal has been since lost or abstracted. This evidence does not impeach the journal; it merely shows what the journal was; it establishes a lost record; and it was, under the circumstances, rightly received for that purpose. *State v. Mason*, 43 La. Ann., 590. It undoubtedly is, as counsel claim, our duty to take judicial notice of the legislative journals. In this case we have made a very careful examination of the journal of the house. For so important a public record, it is, we must say, strangely fashioned—wonderfully made. It consists of loose sheets of paper bound together with a frayed and fragile twine. The vote on roll call is shown by attaching with a pin, or mucilage, a printed list of the members voting yea and nay, to a piece of paper showing the question upon which the vote was taken. The sheet containing the record of the vote on House Roll 251, the bill here in question, indicates that some other paper was once fastened to it with a pin. The other paper, which, according to the evidence, showed the yea and nay vote, is gone; the pin has disappeared and counsel for respondent insist that the law has gone with it. "And these things," says Victor Hugo, in *Les Misérables*, "took place, and the kings regained their thrones, and the master of Europe was put in a cage, and the old regime became the new, and the light and the shadow of the earth changed places, because, on the afternoon of a summer day a peasant boy said to a Prussian in a wood, 'Go this way, and not that.'" Those were momentous consequences of a trival and commonplace event; but if we were to adopt the views of

counsel for respondent, we would have in this state
a condition of affairs capable of producing at any
time, and likely to produce at some time, a situation
which would exhibit almost as striking a dispropor-
tion between cause and effect. If counsel are right
in their contention, then our most important stat-
utes are liable to be annulled by the accidental displace-
ment of a pin; municipal bonds may be invalidated and
men may lose their property and their liberty; divorces
may prove worthless and marriages may become null and
children be bastardized, because some clerk, charged with
the duty of journalizing legislative proceedings, has by
mischance used mucilage instead of paste. The doctrine
is monstrous; its acceptance is unnecessary and might
prove disastrous. When the journals are defective, mu-
tilated or incomplete, their silence should not, as against
the enrolled bill, be taken as evidence that the yeas and
nays were not recorded as required by the constitution.
The condition of the house journal, as a record of legisla-
tive action upon House Roll 251, does not justify us in
accepting it as an unimpeachable witness; and we ac-
cordingly hold that the bill was passed in strict con-
formity with constitutional procedure.

Another objection to the law is that, so far as it affects
respondent, it is special legislation, because he is the only
clerk of the district court in a county having more than
one hundred thousand inhabitants. We regard this ques-
tion as being settled in favor of the relator by *State v.
Stuht*, 52 Nebr., 209, in which it was held that a law, gen-
eral in character, although affecting but one city, is con-
stitutional.

It is claimed that the act is unconstitutional because
it amends section 1 of chapter 28 and section 43 of
chapter 19, Compiled Statutes, 1899, without embracing
such sections as amended and without repealing the
original sections. Counsel evidently mistake somewhat
the scope and purpose of the law. Section 1 of chapter
28 declared, before the adoption of the amendatory stat-

ute, that the clerk of the district court should charge and receive for his services the compensation fixed by the third section of the act. That is precisely what section 1 declares now. It has not been amended; its meaning has not been changed; the clerk may still charge and receive for his services the compensation fixed by the third section. Section 43 of chapter 19, Compiled Statutes of 1899, is as follows: "The clerk of the supreme court, and of the several districts in this state, shall have power to appoint deputies; and deputies of the district clerks shall be residents of the counties in and for which they act. Such deputies shall be sworn faithfully to perform the duties of their office, before they enter upon those duties." The amendatory act provides that the county board may, in its discretion, allow the clerk of the district court "one deputy at a compensation not to exceed one half that allowed his principal." The purpose of this provision, in our judgment, was not to limit the number of the clerk's deputies, but to authorize the county board to pay one of such deputies out of the receipts of the clerk's office. This construction is reasonable and should be adopted, so that effect may be given to the presumption that the legislature kept within its constitutional orbit. Section 43 has not been affected in any way by the new legislation; it remains as it was before House Roll 251 became a law.

One further argument against the validity of the act of 1899 is that the amendatory legislation is foreign to the subject of the section amended. The original section determined the compensation of the clerk; it gave him the entire amount earned as the reward of his services. And the main idea, the dominant thought, of the amendatory act was also to fix the clerk's compensation. It had, therefore, a most intimate relationship with the primary object of the section amended. The other provisions of the act are incidental and subsidiary to the main purpose of the legislature, which was to reduce the clerk's salary and require him, under certain circumstances, to turn

over to the county a portion of the earnings of his office. The amendment was germane to the section amended, and it was clearly embraced within the title of the amendatory act.

The judgment is reversed, and the cause remanded, with direction to the district court to award the peremptory writ.

REVERSED AND REMANDED.