STATE, EX REL. MARION E. BALL, RELATOR, V. GEORGE E. HALL, TREASURER OF THE STATE OF NEBRASKA, RESPONDENT.

FILED NOVEMBER 22, 1935. No. 29,698.

*Good, Good & Kirkpatrick,* for relator.

*G. E. Price, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

This is an original action in mandamus, brought directly in this court by the relator to require the state treasurer to countersign and pay a warrant duly drawn by the state auditor and approved by the secretary of state.

This action involves the test of an act of the 1935 session of the Nebraska legislature in respect to the appropriation bill, being House Roll No. 381, entitled, "A Bill for an Act making appropriations for the State Government for the biennium ending June 30, 1937, and the conditions of payment thereof, and to declare an emergency;" and a portion thereof reads as follows:

"Section 9.  Attorney General.

| 2 | Salaries and Wages | $48,000.00 |
| 3 | Maintenance (Office) | 9,000.00 |
| 4 | Litigation | 20,000.00 |
| 5 | Costs and Judgments | 5,500.00 |
| 6 | Protection of Irrigation Rights, North Platte District | 55,000.00" |

The last item in the above appropriation can be traced through the journals of both houses, and the alleged mistake is charged to be an error of the enrolling clerk in relation thereto.  It appears from the journal of the House that, after some discussion, this last item was reduced to $45,000.  The bill was engrossed, and in some way the enrolling clerk entered it at $10,000, instead of making a reduction of $10,000.  The bill in this form went to the Senate, and the Senate decided that $45,000 might not be sufficient, and, while approving the original bill at $45,000, the Senate added $30,000, providing, however, that this

last $30,000 could only be expended by the joint action of the governor and the attorney general. The House refused to concur, and appointed a conference committee, then a second, and finally a third conference committee acted on this matter.

In this third conference committee, the Senate receded from insisting on the additional appropriation of $30,000, and inserted in lieu thereof $10,000, the same to be in addition to the $45,000 already concurred in by the Senate. Then, by a mistake of the enrolling clerk, the original item of $45,000 was made $10,000.

When this bill reached the office of the governor, the mistake was detected, and the governor inserted these words when he approved the bill, "Correction Section 10, line 5½, Protection of Irrigation Rights, North Platte District, $45,000;" and, as thus amended, the governor approved the bill (Laws 1935, ch. 177).

The respondent, State Treasurer Hall, insists in his brief and argument that the fact that the governor attempted to correct it before signing the bill is not sufficient to correct the record of an enrolled bill; in other words, that the state treasurer, as an administrative officer, is not allowed to reject an enrolled bill and pay out funds on the authority of the journals alone.

There is abundant authority to support the proposition that the ministerial acts of a state officer, such as a treasurer, not involving judgment or discretion, may be enforced by mandamus.

This is so because the question whether the writ of mandamus shall be granted or refused always depends upon the character of the act in question, and not upon the office held by the respondent. 18 R. C. L. 192, sec. 116, and cases there cited; *Riley v. Carter,* 165 Okla. 262, 25 Pac. (2d) 666, 88 A. L. R. 1018; *State v. Carter,* 167 Okla. 32, 27 Pac. (2d) 617, 91 A. L. R. 1497; *State v. Bryan,* 102 Neb. 506, 167 N. W. 783. Or, as stated by Chief Justice Marshall in *Marbury v. Madison,* 1 Cranch (U. S.) 137: "It is not by the office of the person to whom the writ is directed, but

the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined."

The litigation now presented to this court can be stripped of all details and stated in the form of two questions: (1) Was this $45,000 appropriation made by the legislature? (2) Was the action of the legislature, as shown by the journal of the House and the journal of the Senate, the true evidence of what had been done, or was the enrolled bill the evidence of the action taken?

The first case arising in this state of a similar nature was *State v. McLelland,* 18 Neb. 236, 25 N. W. 77. This was an application for mandamus to compel the county clerk of Nance county to give notice of an election for register of deeds on November 3, 1885. An act had been passed by the last preceding legislature that a county was entitled to a register of deeds when the number of inhabitants reached 15,000. In the bill as enrolled, by an error the number given was 1,500. Judge Maxwell, in denying the writ, discussed many of the early cases, viz.: *Clare v. State of Iowa,* 5 Ia. 509; *Duncombe v. Prindle,* 12 Ia. 1; *Green v. Weller,* 32 Miss. 650; *Evans v. Browne,* 30 Ind. 514; *People v. Devlin,* 33 N. Y. 269; *Legg v. Mayor,* 42 Md. 203; *Spangler v. Jacoby,* 14 Ill. 297.

In citing *Purdy v. People,* 4 Hill (N. Y.) 384, Judge Maxwell says that in England the law-making power is omnipotent, as the British Constitution itself is a creature of parliament, but in the United States every act may be tested by the Constitution and declared void if not in conformity with its requirements.

Our court appeared to follow the case of *Gardner v. Collector,* 6 Wall. (U. S.) 499, and held that the certificate of a presiding officer that a bill had passed was only *prima facie* evidence of that fact, and, if the journals disclosed that a bill had not actually passed, the presumption would be overthrown and the act declared invalid.

This court had a second register of deeds case before it in *State v. Robinson,* 20 Neb. 96, 29 N. W. 246, and followed the former decision.

These matters were discussed by this court in *State v. Moore,* 37 Neb. 13, 55 N. W. 299, which was an action involving the validity of a legislative appropriation for 1893. This decision is closely in point with the case at bar. Briefly, it involved a general appropriation bill carrying an item of $15,000 for the expense of impeachment proceedings, which was duly passed by both houses, but by an error of the enrolling clerk the $15,000 was changed to $25,000, in which form it was signed by the presiding officers of both houses and approved by the governor. It was held that the bill appropriated only $15,000 for the purpose specified.

In *Webster v. City of Hastings,* 59 Neb. 563, 81 N. W. 510, Judge Sullivan said: "The journals, being the records of legislative proceedings kept in obedience to the command of the Constitution, are considered the best evidence of what affirmatively appears in them regarding the enactment of laws." And further: "If the entries found in the journals explicitly and unequivocally contradict the evidence furnished by the enrolled bill, the former will prevail." See *State v. Frank,* 60 Neb. 327, 83 N. W. 74; *State v. Mickey,* 73 Neb. 281, 102 N. W. 679.

From an examination of the record in this case and the authorities cited hereinabove, this court states the law to be that, when the journals of both houses of the legislature and the signature of the governor each clearly show the passage of an act in a certain definite form, the undisputed mistake of an enrolling clerk will not be allowed to defeat the act.

It is found that the relator performed certain services for the state of Nebraska in gaging the North Platte stream at Douglas, Torrington, Alcova, and Bridgeport, as directed by R. H. Willis, chief engineer in charge thereof; that a proper voucher for $52.07 for subsistence, lodging, and automobile hire, taxi, and carfare in connection therewith was duly certified by William H. Wright, attorney general, examined by the state auditor, and approved by the secretary of state, and that a warrant, drawn by the state auditor

upon the appropriation herein discussed, was approved by the secretary of state and presented to the state treasurer, who refused to countersign said warrant or to pay the relator the amount thereof out of the appropriation aforesaid.

There being no other fund out of which relator's just claim may be paid, the court finds the relator is without adequate remedy except by a writ of mandamus, as prayed by him, and the writ is allowed.

WRIT ALLOWED.