342 P.2d 706

**STATE ex rel. Barton A. BRASSEY and George L. Crookham, Jr., Plaintiffs,**

**v.**

**Max HANSON, Chief Clerk of the House of Representatives, Edward Middlemist, Secretary of the Senate, William Drevlow, Lt. Governor and President of the Senate, and Robert Doolittle, Speaker of the House of Representatives, Defendants.**

**No. 8807.**

Supreme Court of Idaho.

Aug. 3, 1959.

Allan G. Shepard, Boise, for plaintiffs.

Frank L. Benson, Atty. Gen., E. G. Elliott, Thos. Y. Gwilliam, B. James Koehler, Jr., Asst. Attys. Gen., for defendants Drevlow, Middlemist and Doolittle.

Sylvan A. Jeppesen, Boise, for defendant Hanson.

TAYLOR, Justice.

Relators, members of the House of Representatives, as plaintiffs, made original application to this Court for a writ of mandate to compel defendants, as Chief Clerk and Speaker of the House of Representatives, and Secretary of the Senate, and the Lt. Governor as President of the Senate, all of the Thirty-fifth Session of the Idaho Legislature, to sign and present to the Governor, House Bill No. 349, as amended and passed by both houses of the legislature.

Alternative writ issued. Appearing for the President and Secretary of the Senate and the Speaker of the House of Representatives, the Attorney General filed a motion to quash the alternative writ and a return thereto. Max Hanson, Chief Clerk of the House of Representatives, filed a separate return.

The act in question, Sess.Laws 1959, c. 299, is entitled "Idaho Income Tax Act" and purports to be a revision of the state income tax law, intended to make the provisions of the state law "identical to the provisions of the Federal Internal Revenue Code relating to the measurement of taxable income". It is a lengthy act and contains a repeal of the existing income tax law. Idaho Code, tit. 63, c. 30, as amended.

"We take judicial notice of the public and private acts of the legislature (Sec. 16–101(3) I.C.A. [I.C. § 9–101]), and the Journals of the legislative bodies to determine whether an act of the legislature was constitutionally passed and for the purpose of ascertaining what was done by the legislature. Burkhart v. Reed, 2 Idaho, Hasb., 503, 509, 22 P. 1; State v. Eagleson, 32 Idaho 280, 181 P. 935." Keenan v. Price, 68 Idaho 423, 435, 195 P.2d 662, 668.

The parties on both sides recognize the applicability of the "journal entry rule." 82 C.J.S. Statutes § 83. In their pleadings they refer to and plead the journal entries of both houses. Thus, no issue of fact is raised.

During its course through the house, H.B. No. 349 was amended by striking from the printed bill, page 9, line 10, of § 24, the number "3.5", and inserting in lieu thereof the number "3". The bill was passed by the house, as amended, by a vote of 44 ayes and 13 nays. In the senate other amendments were added and the bill was passed as amended, and as amended in the senate, by a vote of 33 ayes and 11 nays.

Upon its return to the house that body concurred in the senate amendments and again passed the bill, as amended in the senate, by a vote of 48 ayes, 9 nays.

Through oversight or error in enrolling, the house amendment was omitted, and the enrolled bill was signed by the president of the senate and the speaker of the house, and was approved by the governor, in form without the house amendment.

Section 24 of the act fixes the graduated tax imposed upon individuals, estates and trusts. Subsection (a) fixes the rate of the tax on the first $1,000 of taxable income. As originally introduced, this rate was stated in the bill to be 3.5 per centum. The house amendment reduced the rate to 3 per centum.

Plaintiffs assume that the bill as enrolled is invalid under previous decisions of this court (Burkhart v. Reed, 2 Idaho 503, 22 P. 1; Katerndahl v. Daugherty, 30 Idaho 356, 164 P. 1017), and pray for an order requiring defendants to correctly enroll the bill to include the house amendment, and then to sign and present the corrected bill to the governor.

Relying on the same authorities the defendants contend the bill as enrolled is invalid and that it cannot now be corrected, and ask the court to declare invalid both the enrolled bill and the bill as passed by the legislature.

Burkhart v. Reed, supra, is not in point. There the plaintiff sought to have the court take testimony as to what occurred in the house of representatives on the closing day of the session and from such evidence find the facts, and make or correct the journal entries to conform to the facts so found. The court said:

"* * * The principle of law is settled beyond controversy that a court will not go behind the journal of a legislature to ascertain what was done by that body. The journal itself is conclusive, and, if the journal is incorrect or improperly made up, it is for the legislature itself to correct it, and not for the court. The journal, as filed, purports to be the journal of the legislature. It is signed by George P. Wheeler, speaker *pro tem.* of the house, and would, therefore, seem to be correct on its face. The presumption always is that when an act of the legislature is signed and enrolled that it has gone through all the necessary formalities. A few of the states hold that the enrolled statute is conclusive evidence of its due passage and validity. A great majority of the states, however, hold that this makes out a *prima facie* case only, and that such case may be overthrown by the journals, and that the judges, for the purpose of satisfying themselves, may take judicial notice of the journal, and, if it appear to be regu-

lar, that is final and conclusive upon the courts." Burkhart v. Reed, 2 Idaho 503, 511, 22 P. 1, 4.

Here the journal entries are not questioned by either party, and the court in determining the validity of the statute is not requested to make any change or correction therein.

Katerndahl v. Daugherty, supra, was an action against the secretary of state seeking to compel the secretary to insert in an enrolled bill an amendment made in the senate which was omitted through error in enrolling. The court said:

"Section 10 of article 4 of the Constitution reads in part as follows: 'Every bill passed by the Legislature shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if he *did* [do] not approve, he shall return it with his objections to the house in which it originated, which house shall enter the objections at large upon its journals and proceed to reconsider the bill.' Under this section of the Constitution, no bill can become a law unless it is presented to the Governor for his approval. By the agreed statement of facts the bill as amended was never presented to the Governor and therefore cannot be a law of the state. This proposition is sufficient to dispose of this case.

"The question as to whether the bill as certified by the presiding officers of the two houses of the legislature, and signed by the governor, is a valid law is not presented in this case and will not be decided." Katerndahl v. Daugherty, 30 Idaho 356, 358–359, 164 P. 1017, 1018.

While the court refused to require the secretary of state to correct the enrolled bill by inserting therein the senate amendment, it did not declare the act, as certified by the officers of the two houses and approved by the governor, invalid. The act was published by the secretary of state as certified, Sess.Laws 1917, c. 61, and in part still subsists as recognized law, I.C. §§ 40–1603, 40–1605. The amendment omitted in that case consisted of the two words, "when completed", intended to clarify the act as to the basis of accounting between highway districts affected by the creation of a new district. The decision in effect is only that an amendment, of minor import, was lost through the enrolling error.

In the case at bar the amendment is of vital importance not only to the state, but to every income taxpayer. Because of the great public importance of the issue, we have accepted original jurisdiction (Luker v. Curtis, 64 Idaho 703, 136 P.2d 978; Keenan v. Price, 68 Idaho 423, 195 P.2d 662) and, waiving questions of technical procedure, will determine the issue upon its merits.

We have many times held that mere clerical errors or misprisions occurring in legislative acts will be corrected by the courts. See Roos v. Belcher, 79 Idaho 473, 321 P.2d 210, where such cases are collected on page 481 of 79 Idaho, on page 214 of 321 P.2d. The error in this case, although clerical in its origin, materially affects a vital matter of substance. See Gillesby v. Board of Com'rs of Canyon County, 17 Idaho 586, 107 P. 71. In the Gillesby case the court quoted the applicable general principle from In re Wellington, 16 Pick. 87, 33 Mass. 87, 26 Am.Dec. 631, as follows:

" 'That when called upon to pronounce the invalidity of an act of legislation passed with all the forms and solemnities requisite to give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt.'

"And this rule has been approved in this state. Wooley v. Watkins, 2 Idaho, Hasb., 590, 22 P. 100, [102]; Wright v. Kelley, 4 Idaho, Hasb., 624, 43 P. 565." Gillesby v. Board of Com'rs of Canyon County, 17 Idaho 586, 592, 107 P. 71, 72.

" 'It is fundamental that the judicial power to declare legislative action invalid upon constitutional grounds is to be exercised only in clear cases. * *' Los Angeles Gas & Electric Corp. v. Railroad Commission, 289 U.S. 287, 53 S.Ct. 637, 645, 77 L.Ed. 1180, at page 1194." Petition of Mountain States Telephone & Tel. Co., 76 Idaho 474, 480, 284 P.2d 681, 683.

" 'In the case of statutes passed by the legislative assembly and assailed as unconstitutional the question is not whether it is possible to condemn, but whether it is possible to uphold; and we stand committed to the rule that a statute will not be declared unconstitutional unless its nullity is placed, in our judgment, beyond reasonable doubt * * *. * * *' State [ex rel. Hay] v. Alderson, 49 Mont. 387, 142 P. 210, at page 212, Ann.Cas.1916B, 39." Keenan v. Price, 68 Idaho 423, 433, 195 P. 2d 662, 667.

"The cardinal principle of statutory construction is to save and not destroy. State [ex rel. Graham] v. Enking, 59 Idaho 321, at page 345, 82 P.2d 649; and it is incumbent upon a court to give a statute an interpretation which will not nullify it if such construction is reasonable or possible. Intermountain Title Guaranty Co. v. Egbert, 52 Idaho 402, at page 410, 16 P.2d 390; North-

ern Pac. R. Co. v. Shoshone County, 63 Idaho 36, at page 40, 116 P.2d 221; Bel v. Benewah County, 60 Idaho 791, at page 796, 97 P.2d 397." Keenan v. Price, 68 Idaho 423, 437, 195 P.2d 662, 670.

"The same presumption which attaches in favor of the constitutionality of a statute with respect to its subject matter, * * * is indulged with respect to its form and enactment, and the burden of proof is on one who claims that a statute was not duly enacted * * *." 82 C.J.S. Statutes § 82, p. 135. State v. Gastelum, 75 Ariz. 271, 255 P.2d 203.

In Rice v. Lonoke-Cabot Road Improvement Dist. No. 11, 142 Ark. 454, 221 S.W. 179, 181, the Arkansas court held valid an act creating a road improvement district, from which the enrolling clerk had omitted description of 19 sections of land from the district as set forth in the bill passed by the legislature. The governor had approved the bill as enrolled. The court said:

"The chief insistence for reversal is that the bill approved by the Governor was a different bill from the bill passed by the Legislature. An enrolled bill, in Legislative parlance, is a reproduction or copy of the identical bill passed by both houses of the General Assembly. The enrolling clerk or committee has no power or authority to modify a bill passed by the General Assembly in any respect. It follows that the purpose and intention of the Governor in signing an enrolled bill, or in allowing an enrolled bill to become a law without his signature, is to approve the bill passed by both branches of the Legislature, or to acquiesce in such bill becoming a law. In approving an enrolled bill, therefore, it may aptly be said that the Governor intends to, and does, approve the original or identical bill passed by the General Assembly. For this reason additions, omissions, or misprisions of the enrolling clerk in copying the bill to be signed by the Speaker of the House and President of the Senate and to be presented to the Governor do not impair or invalidate the act. Otherwise legislation would depend entirely upon the accuracy of the enrolling clerk and care of the enrolling committee.

"No rule of law is better established in this state than the rule to the effect that an enrolled bill is not conclusive of what bill was enacted. An enrolled bill may be impeached by an inspection of the original bill, indorsements thereon, journals, and other official records of the Legislature and official records in the office of the secretary of state. * * * If an enrolled bill signed by the President of the Senate and Speak-

er of the House is not conclusive and determinative of what bill was enacted by the General Assembly, no sound reason can be assigned why it should be conclusive and determinative of what bill the Governor approved; in other words, the additions, omissions, or misprisions contained in an enrolled bill should not bind the Governor to the letter of the copy by reason of his approval any more than the Senate and House whose President and Speaker signed it. In the case of Haney v. State, 34 Ark. 263, this court corrected a manifest and material error in an enrolled bill which had been signed by the President of the Senate and Speaker of the House and the Governor by inserting the word 'fourth' for the word 'fifth' so as to make the act conform to the intention of the Legislature in enacting, and the Governor in approving, it. The correction made to conform to the intention of the Legislature and Governor was material, because, unless made, the act was void." 221 S.W. at page 181.

The foregoing from the Arkansas decision was quoted with approval by this court in Keenan v. Price, supra. The latter case involved the validity of a constitutional amendment. Through error, the "state auditor" had been omitted from the list of officers constituting the executive department of the state government. The state

auditor was included in the title of the joint resolution and in the question to be voted upon by the electorate. The auditor was omitted from the proposed amendment, as engrossed, and as published prior to the election. The court read the words "state auditor" into the amendment on the ground that the record showed the omission to be a clerical error contrary to the legislative intent and contrary to the intent of the electorate in adopting the amendment.

That case differs from this in that no approval by the governor is involved in the submission to the electorate of a constitutional amendment. In case of an act of the legislature the constitution, art. 4, § 10, supra, requires that the act be presented to the governor for his approval or rejection, or to permit it to become a law without his approval. In passing upon bills presented the governor acts in a legislative capacity. His consideration thereof is an essential element of our legislative process. State ex rel. Foster v. Naftalin, 246 Minn. 181, 74 N.W.2d 249; 82 C.J.S. Statutes § 47; 50 Am.Jur., Statutes, § 96.

In State ex rel. Casper v. Moore, 37 Neb. 13, 55 N.W. 299, a general appropriation bill carried an item of $15,000 for impeachment proceedings. After the bill had passed both houses, the enrolling clerk in copying the bill changed the figure to $25,000. The bill was then signed by the officers of both houses and approved by the

412

governor. In holding that the bill made a valid appropriation of $15,000, the court said:

"* . * * It is now settled that this court will look into the records and journals of the two houses of the legislature to ascertain if they have complied with the constitutional provisions of the state with reference to the enactments of a law. When this is done it becomes evident that the senate did not at any time, nor did the house of representatives upon the final consideration of the bill, agree to an appropriation of $25,000, so that the act cannot be construed as an appropriation of this sum for want of concurrence of all the lawmaking branches. State [ex rel. Marlay] v. Liedtke, 9 Neb. 462, 4 N.W. 68. It is equally clear that both houses did concur in the appropriation of $15,000. This appropriation must also fail, unless approved by the governor, or by the bill's becoming a law in one of the ways provided by the constitution without his approval. The governor, by signing the bill as enrolled, expressed his approval of an appropriation of $25,000. We think that, this sum being one greater than that provided by the legislature, his approval thereof included an approval of the lesser sum. In State v. McLelland [18 Neb. 236, 25 N.W. 77] it was held that a bill creating the office of register of deeds for counties having not less than 15,000 inhabitants did not become a law because the enrolled bill as signed by the governor expressed the number of inhabitants as 1,500 instead of 15,000. The error here was in a matter of description, one essential to the merits of the bill, and the enrolled bill as signed was different in character from that passed by the legislature. In this case the error related to no matter of description, and could not have influenced the governor to approve the bill, when a correct enrollment would lead him to veto it. By giving the law this interpretation, we enforce the clearly expressed will of the people as manifested by their legislative officers. Any other conclusion would permit such clearly expressed will to be thwarted by the carelessness or dishonesty of a clerk in the enrolling rooms. It was to avoid this danger that this court adopted the doctrine that the enrolled act is only prima facie evidence of the enactment of a statute." 55 N.W. at pages 300, 301.

In State ex rel. Ball v. Hall, 130 Neb. 18, 263 N.W. 400, the court upheld the validity of an item of $45,000 in the general appropriation bill, which through an enrolling error had been changed to $10,000 after the bill had passed both houses.

"When this bill reached the office of the governor, the mistake was detected, and the governor inserted these words when he approved the bill, 'Correction Section 10, line 5½, Protection of Irrigation Rights, North Platte District, $45,000;' and, as thus amended, the governor approved the bill (Laws 1935, c. 177)." 263 N.W. at page 401.

In sustaining the correction made by the governor, the court said:

"In Webster v. City of Hastings, 59 Neb. 563, 81 N.W. 510, 511, Judge Sullivan said: 'The journals, being the records of the legislative proceedings kept in obedience to the command of the constitution, are considered the best evidence of what affirmatively appears in them regarding the enactment of laws.' And further: 'If the entries found in the journals explicitly and unequivocally contradict the evidence furnished by the enrolled bill, the former will prevail.' See State [ex rel. Douglas County] v. Frank, 60 Neb. 327, 83 N.W. 74; State [ex rel. McClay] v. Mickey, 73 Neb. 281, 102 N.W. 679, 119 Am.St.Rep. 894." 263 N.W. at page 402.

In Beacon Club v. Buder, 332 Mich. 412, 52 N.W.2d 165, appeal dismissed Eight O'Clock Club v. Buder, 72 S.Ct. 1077, 343 U.S. 971, 96 L.Ed. 1366, rehearing denied 344 U.S. 848, 73 S.Ct. 6, 97 L.Ed. 659,

through an enrolling error an amendment made by the legislature was omitted. The governor returned the bill rejected because of the omission. The clerk of the house thereupon corrected the bill by adding the omitted section and returned the bill to the governor, who then approved it. The court held that the first presentation to the governor was a nullity; that the clerk properly performed a ministerial duty in correcting the bill; and that on approval by the governor it became law.

In State ex rel. Board of Com'rs of Laramie County v. Wright, 62 Wyo. 112, 163 P.2d 190, the court considered a bill providing for distribution of revenues derived from a gasoline tax; 23% to the several counties, 2% to the several cities and towns over 1,500 population, and the remainder to the state highway fund. Through an enrolling error, the 23% to the counties was changed to 25%. The purpose of the act was to provide financial aid to the cities which had not theretofore shared in the distribution of the tax. The governor, desiring to preserve the provision for the benefit of the cities, approved the act and returned it to the secretary of state with a letter calling attention to the error and expressing his disapproval thereof. The court sustained the act as passed by the legislature, saying:

"* * * So we come back to the question as to whether it may be fairly

said that the governor signed the bill as it was passed by the legislature. And in that connection we must bear in mind that every act is presumed to be constitutional; that we resolve all reasonable doubt in its favor, and that the presumption of constitutionality not only reaches the subject matter, but applies equally to the procedural requirements in the enactment of laws. 59 C.J. 622, note 39. The letter of the governor which accompanied the bill when he filed it with the secretary of state shows that he knew of the clerical error in the enrolled act." 163 P.2d at page 196.

And that the circumstances

"would seem to give rise to the inference or presumption that he meant to approve the act in so far as 25 percent of the aforesaid revenue was concerned—in other words that he intended to and did sign the act in so far as it constitutionally could be valid." 163 P.2d at page 196.

The court supported its conclusion by reference to State ex rel. Ball v. Hall, supra, and Rice v. Lonoke-Cabot Road Improvement Dist., supra. It also compared the facts with those of State ex rel. Casper v. Moore, supra, and said:

"The legislation in the case at bar is in the nature of an appropriation bill, in which the rule that the greater includes the less may well be applied. And it may be that the rule of State ex rel. [Casper] v. Moore cannot be extended to any other class of cases. We do not know of any sound reason why we should dissent from the Nebraska court in this case. Mistakes do occur, and it might be found unfortunate in the future in connection with appropriation and similar bills if we should now take a position contrary to State ex rel. Casper v. Moore. And so we approve it." 163 P.2d at page 197.

In its mandate, the Wyoming court directed that the word "twenty-five", "should be read 'twenty-three', and as thus amended, the act should be upheld."

In his letter advising of his action on the bill here in question, the governor wrote:

"The Honorable Robert Doolittle
Speaker of the House
House Chamber
Building
"Dear Mr. Speaker:
"I have the honor to inform you that I have approved and am transmitting to the Secretary of State House Bill No. 349.

\*     \*     \*     \*     \*     \*

"It should be noted that while this bill does increase the tax rates appli-

cable to taxable net income from 2% to 3% and 8.8% to 9.5%, the bill also increases dependency exemptions from $200 to $600 and adds substantial business benefits * * *." Permanent House Journal, 35th Session of the Legislature, page 873.

■ From this communication it appears that the governor knew the bill as passed by the legislature provided for a rate of 3%, not a rate of 3.5%. It is therefore obvious that his approval was of the 3% rate and not of the 3.5% rate. As said by the Wyoming court, it is to be presumed that the governor approved only what he could constitutionally approve, that is, the bill as passed by the legislature. He did not, and could not, approve the 3.5% rate, erroneously copied into the bill by the enrolling clerk.

The governor's approval of the bill as passed by the legislature is also shown by his endorsement of approval thereon as follows:

"This bill as amended as amended in the senate received by the Governor on the 13th day of March, 1959, at 10:45 a. m., o'clock and approved on the 19th day of March, 1959, at 2 p. m., o'clock.

"/s/ Robert E. Smylie

"Governor"

■ The governor's letter to the speaker of the house, as spread upon the house journal, and his endorsement on the enrolled bill as filed in the secretary of state's office, are official documents of which this court may take judicial notice. Keenan v. Price, supra. It is these records of the governor's official action which distinguishes this case from Katerndahl v. Daugherty, supra. In that case there was nothing to show that the governor did not approve the bill as enrolled. In this case the record conclusively shows that all three of the divisions of legislative power—the house, the senate, and the governor—approved the house amendment and made it a part of the act.

The attorney general contends that since the question as put for the final vote on the bill in the house did not include the phrase "as amended"—intended to refer to the house amendment—the house did not vote on the bill as previously amended by the house. In the oral argument the attorney general further contended that the omission of the phrase may have led the house enrolling clerk to assume that the house amendment had been rejected by the senate. Neither contention has merit. The vote on the question as put cannot be construed as a vote to strike the amendment already made by the house, or to further amend the

bill. Moreover, the endorsements on the bill made by the speaker of the house and by the chief clerk of the house, both refer to the house amendment as a part of the bill. These responsible officers of the house, defendants here, knew that the house amendment was a part of the bill as passed by the senate. Also, the endorsement by the defendant Drevlow, as president of the senate, refers to the house amendment as a part of the bill.

It follows that the bill was constitutionally enacted as amended by the house, and that the act, now Sess.Laws 1959, c. 299, is valid and that subsection (a) of § 24 thereof provides:

"(a) On the first $1,000 of such taxable income or any part thereof, at the rate of 3 per centum;"

and is to be so applied as the law of the state.

This disposition of the case makes the writ of mandate prayed for unnecessary, hence we do not rule upon the issues attendant upon the procedure sought by the petition. Accordingly the permanent writ is denied, and the application is dismissed.

PORTER, C. J., and SMITH, KNUDSON and McQUADE, JJ., concur.